Buel David WILSON, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Oct. 6, 1976.

Certiorari Denied by Supreme Court
Feb. 14, 1977.

Erby L. Jenkins and Ray H. Jenkins, Knoxville, for appellant.

R. A. Ashley, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Herbert S. Moncier and Ralph E. Harwell, Asst. Attys. Gen., Knoxville, for appellee.

TATUM, Judge.

## OPINION

Appellant was convicted of first degree murder and sentenced to death by electrocution. We must reverse.

The deceased, Larry Jackson, and a companion left a nightclub in Knoxville known as "Uncle Sam's" at about 3:30 o'clock A.M., on May 9, 1975. They were students at the University of Tennessee and worked at Uncle Sam's as bartenders. They were "high". The deceased's blood alcohol content was .14%. They encountered a Mr. Johnson accompanied by a young lady and the deceased and Mr. Johnson commenced "horsing around". The deceased accidentally bumped into the young lady, knocking her down. The deceased and his companion helped her up and deceased apologized to her. Johnson and deceased continued to "horse around" until the play was beginning to develop into a fight.

Appellant and a companion entered the parking lot from another club while Jackson and Johnson were "acting out karate". Appellant sat down in the front seat of his car on the driver's side. In the meantime, deceased and Johnson, still "acting out karate", bumped into appellant's automobile. Appellant then got out of his car with a pistol and held it in both hands aiming it at about eye level. He made the statement, "I'll teach you to bump into my car", and shot the deceased in the chest, killing him. Appellant and deceased were not acquainted with each other.

There was conflict in the testimony but the jury accredited the State's proof that deceased did not move toward appellant and said nothing to him. Deceased was about seven or eight feet from appellant when he was shot.

Appellant testified that he had sat down in the front seat of his car, but his legs were still on the outside and that Jackson and Johnson were against the car door, preventing him from getting his legs in the car. Jackson and Johnson, according to appellant, then moved to the rear of his car. Appellant said that he had asked them to move away from his car and the deceased made an obscene remark in reply. He had a money box in his car and got his pistol from the box because he was afraid. He said that the deceased stepped toward him from the rear of his car. Appellant had pushed the door open and got out of his car. He said that deceased made a karate movement and yelled and then he shot the deceased. Appellant then fled to Gatlinburg.

In an extra-judicial statement given by appellant, he estimated that he had the pistol in his hand for a total of thirty seconds.

■ We are first confronted with the question as to whether the evidence supports a conviction of murder in the first degree. In *State v. Bullington*, 532 S.W.2d 556 (Tenn.1976), the Supreme Court reviews the rules that we must follow:

"The premeditation-deliberation element of first degree murder requires that the act be performed with a cool purpose. *Drye v. State*, 181 Tenn. 637, 184 S.W.2d 10 (1944); *Winton v. State*, 151 Tenn. 177, 268 S.W. 633 (1925); *Turner v. State*, 119 Tenn. 663, 108 S.W. 1139 (1908); *Poole v. State*, 61 Tenn. 288 (1872); *Dale v. State*, 18 Tenn. 551 (1837). In order to constitute murder in the first degree, the cool purpose must be formed and the deliberate intention conceived in the mind of the accused, in the absence of passion, to take the life of the person slain. *Winton v. State, supra*. If the purpose to kill is first formed during the heat of passion, the accused, to be guilty of first degree murder, must have committed the act after the passion has subsided. 'Passion' as here used means any of the human emotions known as anger, rage, sudden resentment or terror which renders the

mind incapable of cool reflection. *Drye v. State*, supra.

'The mental state of the assailant . . rather than the length of time . . is the material point. . . . The mental process . . . may have been instantaneous, and the question of vital importance is—was the mind, at that moment, so far free from the influence of excitement, or passion, as to be capable of reflecting and acting with a sufficient degree of coolness and deliberation of purpose; and was the death of the person assaulted, the object sought to be accomplished—the end determined upon.' *Clarke v. State*, 218 Tenn. 259, 268, 402 S.W.2d 863 (1966).

Once the fact of killing has been established, the law presumes it to be murder in the second degree. *Witt v. State*, 46 Tenn. 5 (1868). And, the burden is upon the state to prove premeditation-deliberation which raises the degree of the crime to first degree murder. *Bailey v. State*, 479 S.W.2d 829 (Tenn.Cr.App.1972). If the killing is accomplished by poisoning or by lying in wait, premeditation is obvious. But, in all other cases a conviction of first degree murder must be supported by evidence of some other kind of willful, deliberate, malicious, and premeditated killing. *Drye v. State, supra*. The nature of the fact to be proven, i. e., the mental state of the accused, is such that ordinarily only circumstantial evidence is available."

The question presented here is a close one but we are constrained to hold that the evidence supports the finding of premeditation and does not preponderate against the jury verdict. The only provocation or cause for passion is that the deceased bumped against appellant's automobile. The deceased was unarmed. Appellant was already in his automobile and could have closed the door and left the scene with no difficulty. Instead, he procured his pistol, got out of his automobile and took deliberate and careful aim at the deceased, telling deceased that he would teach him to bump against his automobile.

In reviewing the evidence, we must take the verdict as having established the credibility of the State's witnesses and the conviction will not be disturbed unless the evidence clearly preponderates against it. *State v. Bullington, supra.* The evidence does not preponderate against the verdict of the jury finding the appellant guilty of murder in the first degree and we must overrule the first assignment of error.

■ Appellant complains of the Trial Court's admitting evidence of other violent and unlawful acts allegedly committed by him.

A detective testified that he had previously seen the pistol used in this slaying and identified it as being appellant's pistol. The detective testified further that this pistol was previously seen while he was investigating another shooting in which appellant shot another individual with a shotgun through the windshield of an automobile. The evidence of the previous shooting was admitted by the Trial Court on the theory that it identified the appellant as being the assailant in the case *sub judice.*

Before trial, appellant gave a lengthy statement to the State's attorneys in the presence of his own attorney, all of whom examined appellant at length and appellant admitted shooting the deceased and described his version of the shooting in elaborate detail. His version was that he shot the deceased in self-defense. We think that under these circumstances, it was error for the Trial Judge to admit the evidence of the other shooting on the issue of identity. Obviously, in view of appellant's admission, there was no issue of identity.

In *Jones v. State,* 523 S.W.2d 942 (Tenn. Cr.App.1975), this Court reiterated the familiar rule that evidence of independent crimes are generally admissible to establish the identity of the accused as being the person who committed the offense under investigation. The Court cited 29 Am. Jur.2d *Evidence* § 322 which is in part as follows:

"Generally speaking, it is only where the identity of the accused is not definitely connected with the offense on trial that other offenses may be introduced to connect and identify him with the case on trial. If the identity of the accused is established by other evidence and is therefore no longer an issue, it is improper to admit evidence of other crimes on the theory of proving identity."

The appellant testified on his own behalf in which he was asked by the District Attorney General about the previous shotgun shooting. This was done to effect his credibility as a witness under the rule discussed in *Collard v. State,* 526 S.W.2d 112 (Tenn. 1975). Appellant replied that he shot at this individual after the person had shot at him five times with a .38 caliber pistol. On cross-examination, he was asked these questions and gave these answers before the jury concerning other charges and incidents:

"Q. All right. Now, you say that, say that you wouldn't hit a twelve year old child? You wouldn't . . . .

A. No, I would not.

Q. . . . you're a peace loving man?

A. That's exactly right.

Q. You do remember August of this year?

A. Yes, I do.

Q. 1975?

A. Yes, I do.

Q. And you say you've never been arrested or charged with assaulting anybody?

MR. RAY JENKINS: He didn't say that.

A. I didn't say that. I said I . . . . .

GEN. MONCIER: He certainly did say that.

GEN. HARWELL: Well, Your Honor. I've got notes and I think the Court has got notes that he said he had never been charged with assaulting anybody in his life.

THE COURT: You may ask him.

Q. So, never been charged with anything like that?

A. I've been charged, but . . . .

Q. Been charged?

A. Yes.

MR. RAY JENKINS: And they can only prove convictions, Your Honor.

GEN. HARWELL: I'm not trying to prove the charge. I'm trying to impeach this witness if at all possible. He's said some things that I think that I'm entitled to ask him about.

THE COURT: Very well. I've overruled the objection. You may ask him.

GEN. HARWELL: Thank you, Your Honor.

Q. And the reason for that charge was the fact that, that you did assault and beat with a pistol and with your boots Giannina Gabillini, who is your girl friend?

A. No, sir, that's not true.

Q. That's not true?

A. No, sir.

Q. And she came down here to the court house and reported that and had blood on her face—she just made that up?

A. She's in the witness room, why don't you ask her?

Q. All right. She come here willing to testify here today?

A. Yes, she is.

Q. And, I believe she is represented by these same lawyers here that you are represented by?

A. Yes.

Q. You and her have made up and are now friends?

A. Me and her has always been friends.

Q. As a matter of fact you made up to the extent that when it came up for trial in Sessions Court on her charge that you had been in jail on that she came in and said she didn't want to prosecute, is that not true?

A. That's true.

Q. All right.

MR. ERBY JENKINS: Your Honor, this is, this is going around . . . . .

MR. RAY JENKINS: I object, too.

THE COURT: All right. I sustain the objection as to the last question, gentlemen.

The outcome of the case has no materiality in it."

\* \* \* \* \* \*

"Q. Now, in fact, Mr. Wilson, when you were arrested back in August of this year and Mr. Pete Rader came up there to arrest you, you pulled a gun on him, did you not?

A. That's untrue.

Q. That just didn't happen?

A. That's not true.

Q. That didn't happen?

A. No, sir, it did not happen.

Q. All right, now, then, you say the reason for you self-defense and the reason for, for your feelings scared of people—first of all, were you scared of your girl friend, Gabellini?

A. Do you want me to tell you about that incident?

Q. Well, first of all answer my question. Were you scared of her?

MR. RAY JENKINS: About the lawsuit about his quarrel with his girl friend and it is objected to, Your Honor.

GEN. HARWELL: We've had a lot of testimony why this man has to be scared of everybody, Your Honor, and I am entitled to ask him—was he scared of his girl friend?

A. Do you mean, could I whip her? No, I don't think I could.

THE COURT: Just a moment. Now, gentlemen, this witness has previously testified that he did not assault his girl friend, so, I sustain the objection."

\* \* \* \* \* \*

"Q. All right. Now, let's talk about, let's talk about this night. You say you were sober, you were not drunk?

A. That's exactly right.

Q. And you were not on any drugs?

A. No, sir.

Q. You were not on any medication of any kind?

A. No, sir, I don't take drugs.

Q. You don't take drugs? Well, now, do you remember an incident back in February of 1975? Were you arrested by Mr. Daling over on UT campus?

MR. RAY JENKINS: I object to that.

GEN. HARWELL: Well, the . . . .

MR. RAY JENKINS: Your Honor, arrested, not tried, not convicted . . . .

THE COURT: All right. I sustain the objection.

GEN. HARWELL: All right.

Q. You don't take drugs?

A. That's exactly right.

Q. And that includes not taking cocaine, not taking codeine, not taking any of the controlled substances under the Tennessee law, is that right?

A. I just said I didn't take drugs, general drugs.

Q. All right. Did you, on the, February the 6th, 1975, have in your Cadillac automobile over on the, over on Kingston Pike near UT a whole drug store full of drugs?

MR. RAY JENKINS: Object, Your Honor.

A. Hell, no! I . . . .

THE COURT: Sustain the objection.

Q. Well, did you have these specific items on you on February the 6th?

MR. ERBY JENKINS: Your Honor . . . .

GEN. HARWELL: On the basis of the ruling, Your Honor—perhaps I better approach the bench and ask . . . .

(Whereupon, a bench conference was held off the record in the presence of the jury but out of the hearing of the jury.)

THE COURT: I sustain the objection, gentlemen, as to the question pertaining to alleged drugs in this case. Ladies and gentlemen of the jury you will disregard the question. The defendant is not being tried on anything except the case on trial."

\* \* \* \* \* \*

Evidence of other crimes is not admissible merely to show propensity or disposition to commit the crime under investigation. *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963); *Harris v. State*, 189 Tenn. 635, 227 S.W.2d 8 (1950); *Dix v. State*, 4 Tenn.Cr. App. 412, 472 S.W.2d 243 (1971). As above stated, the evidence of the previous shooting incident was not admissible on the issue of identification because there was no genuine issue of identification.

■ We now come to the question as to whether the above quoted could be admitted to discredit the testimony of appellant. It is clear that a testifying defendant can be asked on cross-examination whether he has been convicted of an offense of the type which would impeach his testimony, but there were no such previous convictions.

In *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976), the Supreme Court dealt with many of the questions now before us. The Court adopted Rule 608(b) and Rule 609(a) and (b) of the Federal Rules of Evidence, which are as follows:

Rule 608.

*Evidence Of Character And Conduct Of Witness*

. . . . .

(b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Rule 609.

*Impeachment By Evidence Of Conviction Of Crime*

(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

We construe *State v. Morgan, supra,* with respect to the issue of credibility of a testifying criminal defendant as holding:

(1) Inquiry may be made on cross-examination as to specific acts of the defendant which would impeach his testimony for the sole purpose of discrediting his testimony—not for the purpose of prejudicing the jury.

(2) The details of the prior acts shall not be related to the jury.

(3) When a testifying defendant denies the bad act, the issue is foreclosed.

(4) He cannot be questioned as to mere indictments, charges and accusations of some particular offense.

(5) Where a witness is sought to be cross-examined as to specific instances of conduct as contemplated by Rule 608(b), the court shall conduct a jury-out hearing for the purpose of determining that the probative value of such evidence outweighs its prejudicial effect and for the purpose of determining whether or not such evidence is admissible.

The facts relating to the prior shotgun shooting should not have been reviewed before the jury. The appellant's statement was that this was in self-defense, which should have concluded the inquiry. An act of shooting in self-defense will not affect the credibility of a witness. This could serve only to prejudice the jury against appellant, since he was on trial for a shooting. *State v. Morgan, supra; Fee v. State,* 497 S.W.2d 748 (Tenn.Cr.App.1973).

The Trial Judge erred in overruling defense objections to questions as to whether appellant had been "arrested or charged with assaulting anybody". Appellant denied committing this act but admitted the charge. We think that all of the questions asked concerning this "charge" and the detailed facts concerning it (assaulting and beating his girl friend with a pistol) were incompetent and prejudicial to the appellant even though he denied the act. *State v. Morgan, supra; Fee v. State, supra.*

On the alleged incident in February, 1975, concerning drugs, it was necessary for the Court to sustain three objections before the Attorney General would discontinue the pursuit of this line of questioning.

The questions above quoted and others of like import convey the implication that appellant was guilty of attempted homicide with a shotgun, pistol-whipping his girl friend, dealing in or using drugs, and drawing a pistol on a police officer. These questions exceeded the bounds of advocacy and propriety. *Burlison v. State,* 501 S.W.2d 801 (Tenn.1973). The questions themselves were framed so as to impart to the jury prejudicial and incompetent information, the correctness of which the average juror would expect to be within the knowledge of the District Attorney General. *See,* ABA

Standards, The Prosecution Function § 5.6(b) (1968).

We must sustain Assignment II.

Appellant has also questioned the constitutionality of the Tennessee Death Penalty Statute. In view of our disposition of this case, it is not necessary to consider this question.

We have considered all other questions raised in appellant's brief and find them without merit and moot.

On retrial of this case, the Trial Court will conduct a jury-out hearing to determine whether evidence of prior specific acts of bad conduct of appellant is admissible, if such evidence is offered.

The judgment of the Criminal Court of Knox County is reversed and this case is remanded for a new trial.

WALKER, P. J., and O'BRIEN, J., concur.