STATE of Tennessee, Appellee,

v.

Walter Louis HICKS, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

March 23, 1981.

John C. Zimmermann, Asst. Atty. Gen., Nashville, Bobby H. Capers, Asst. Dist. Atty. Gen., Lebanon, for appellee.

William E. Farmer, Lebanon, for appellant.

## OPINION

DAUGHTREY, Judge.

The appellant-defendant, Walter Louis Hicks, was indicted for assault with intent to commit murder in the stabbing of one Larry D. Odum. He was convicted of the lesser offense of assault with intent to commit voluntary manslaughter, receiving a sentence of two to five years imprisonment. On appeal Hicks challenges the sufficiency of the evidence to support the jury's verdict; he complains of the trial judge's failure to order production of the defendant's pretrial statements under Rule 16(a)(1)(A), Tennessee Rules of Criminal Procedure; and he insists that improper comments made by the prosecuting attorney during trial entitle him to a new trial. Our review of the record convinces us that the State's failure to permit the defendant access to his pretrial statement, coupled with certain highly unprofessional and, in some cases, unduly prejudicial comments by the prosecutor, deprived the defendant of a fair trial. Since we cannot say to what extent these matters affected the jury's determination of guilt (as opposed to the assessment of punishment) in this case, we conclude that the judgment must be reversed and the case remanded for a new trial.

Although witnesses at trial gave detailed and often conflicting versions of what occurred, the evidence in this case can be summarized in fairly short order. The defendant and Odum were among a number of men gathered at a public access area near Old Hickory Lake for a "party." Most (if not all) of those present had been drinking beer and various forms of liquor, when a fracas erupted between two of the "guests." Larry Odum testified that when he attempted to stop the fight, the defendant's brother grabbed his arm, and the defendant stabbed him in the back, the side,

and the arm. Odum was taken to a nearby hospital, where some 300 stitches were required to close his wounds.

The defendant admitted at trial that he had stabbed Odum, but claimed that Odum had drawn his knife first and that he had acted in self-defense as Odum advanced on him. Hicks identified a long hunting knife as being the one he used to cut Odum, but the knife was not introduced as an exhibit by either the prosecution or the defense.

■ The defendant first complains of the insufficiency of the evidence presented to the grand jury, arguing that the indictment was based solely on hearsay evidence. There is no merit to this argument, first, because no timely objection was made to the validity of the indictment prior to trial, as required by Rule 12(b)(2), Tennessee Rules of Criminal Procedure, and, second, because an indictment based solely on hearsay testimony is not invalid. *Gammon v. State*, 506 S.W.2d 188, 190 (Tenn.Cr.App. 1973). Moreover, we find that the evidence introduced at trial, when measured by the standard mandated by Rule 13(e), Tennessee Rules of Appellate Procedure, is adequate to support the jury's verdict in the absence of other errors in the record.

■ Those errors, however, are sufficiently serious to require reversal of the conviction in this case. The most substantial problem involves the trial court's failure to order the State to produce for the defendant's inspection a statement he apparently made to law enforcement officials at the time of his arrest. At the pretrial hearing on the defendant's motion, filed under Rule 16 of the Tennessee Rules of Criminal Procedure, defense counsel noted, "It is my understanding, General, that you have no statements from my man, no photographs, no nothing . . .?" To this inquiry, the attorney for the State responded, "All I have got is the knife."

Thus it was the State's implicit position as trial commenced that no statement had been taken from the defendant. The record shows that the trial judge announced the evening recess at 3:55 P.M. on the first day, over the defendant's objection that this abnormally early recess time was merely to give the State overnight to "shore up" its evidence before resting the next morning. After the evening recess was called, defense counsel learned from speaking informally to the State's last witness, Sheriff's investiga-

tor Al Cook, that the defendant had in fact given a statement to officers, as the attorney had long suspected from talking to his client. (As it developed, Hicks had told his attorney that he vaguely remembered giving arresting officers a statement, but with the lapse of 17 months between arrest and trial he was not certain what he had told the officers.)

When Hicks' trial resumed the next day, the State promptly rested its case without presenting additional evidence. Following a motion for judgment of acquittal, which was denied, defense counsel informed the trial judge that he had learned of the existence of a statement taken from his client, and he asked for a mistrial because of the State's failure to produce it. He announced that he wanted Officer Cook recalled to the stand to testify concerning the existence of the statement.

Officer Cook, however, was not in the courtroom, and the State vigorously resisted the defendant's motion for a brief recess to secure Cook's presence. The motion was denied by the trial court, on the ground that the defense attorney should have issued a subpoena for Officer Cook on the preceding afternoon when he first learned of the existence of the statement; the trial judge also refused to issue an *instanter* subpoena.

In the course of the argument on the defendant's motion for a recess and the issuance of a bench subpoena for Cook, the prosecuting attorney's position with regard to prior statements by the defendant began to undergo a subtle but significant change. Instead of denying the existence of any such statement, the Assistant District Attorney maintained that he "didn't know if one existed or not." He continued to resist the defendant's request for production on the ground that no statement had been introduced into evidence. At the same time, he told defense counsel that "if [Hicks] made a statement, and he thinks I'm going to let him get up on the stand and let him tell something different than

what he told once before, he is entirely wrong."

When the defendant's attorney pressed his motion, arguing (correctly) that Rule 16 permits discovery of a defendant's written statement regardless of whether it is offered in evidence, the prosecuting attorney countered:

> Well, you ain't going to let your man— Judge, he ain't going to let him read that statement and decide what he is going to do. I didn't offer it into evidence, but he don't have the right to get up there and tell a lie on the stand.

> \*  \*  \*  \*  \*  \*

> I don't know what the statement says, but I have a pretty good idea because Bill [defense counsel] sure don't want me to use it. I don't know, but I pretty well know what it is going to say.

At another point in the proceeding, the attorney for the State argued that once defense counsel learned of the existence of the statement, it was up to defense counsel to secure a copy of it directly from the officer.

In making his ruling on the defendant's discovery motion, the trial judge said:

> My understanding of the law in Rule 16 ... is that if in fact the Attorney General's office plans to use a statement against the defendant on their direct proof, then they have a duty and obligation to furnish you with a copy of that statement. This is not the fact in this case. There was no mention made of the statement, and no reference made to it.

> If there is a statement that the Attorney General knows about, I think he would have a right to use it on cross-examination of your defendant.

■ The trial judge's interpretation of Rule 16, insofar as it relates to written or recorded statements, is clearly incorrect. Under Rule 16(a)(1)(A), the State may withhold disclosure of a statement it does not intend to offer in evidence *only* if that statement is oral. Otherwise, the defendant has what has been described as "virtual-

ly an absolute right" * to inspect and copy "any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the State, the existence of which is known, or by exercise of due diligence may become known to the district attorney general." Rule 16(a)(1)(A), Tennessee Rules of Criminal Procedure.

Rule 16 of the Federal Rules of Criminal Procedure, upon which the Tennessee discovery rule was modeled, *see* Committee Comment—Rule 16, contains exactly the same language as our Rule 16, and has been interpreted to cover not only written, recorded and transcribed verbatim statements by a criminal defendant, but also written "interpretation[s] or summar[ies]" of statements made by the accused, or a memorandum of an interview "even though not verbatim and not signed" by the defendant. *United States v. Hasiwar,* 299 F.Supp. 1053, 1055 (S.N.D.Y.1969).

■ The prosecutor's duty to disclose extends not only to material in his or her immediate custody, but also to statements in the possession of the police which are normally obtainable by "exercise of due diligence," that is, a request to all officers participating in the investigation or preparation of the case. *United States v. Bryant,* 439 F.2d 642, 650 (D.C.Cir.1971); *see generally* 8 Moore's Federal Practice—Criminal Rules § 16.05; *cf. Barbee v. Warden,* 331 F.2d 842, 846 (4th Cir. 1964). Moreover, the obligation to disclose is a continuing one:

> If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under [Rule 16], he shall promptly notify the other party or his attorney or the court of the existence of the additional evidence or material.

Rule 16(c), Tennessee Rules of Criminal Procedure.

* 1 C. Wright, Federal Practice and Procedure, Criminal § 253 (1969), cited in *United States v. Miller,* 500 F.2d 751, 755 (5th Cir. 1974); *see also United States v. Federman,* 41 F.R.D. 339, 341 (S.D.N.Y.1967) ("almost automatic right").

In its brief on appeal, the State continues to argue that the admissible proof fails to show conclusively that there was in fact a written statement given by the defendant to law enforcement officers. On the contrary, we think the record suggests very strongly the existence of such a statement in the possession of Officer Cook. Moreover, the cross-examination of the defendant by the prosecuting attorney reveals at least a fleeting knowledge on his part of the substance of the statement. Thus the record shows that the defendant was asked:

> Did you tell the Police Department, son, the boy that came out there—that the boy came at you with a bottle? Wasn't that your first story? ... Wasn't that the first story you told over at the Police Department?

The record further demonstrates the good faith attempt by defense counsel to secure a copy of the statement or testimony which would establish its existence as well as its substance. The attorney was thwarted in his efforts not only by the failure of the State's attorney to exercise due diligence in determining evidence available to State officers, but also by the trial court's refusal to permit a brief recess in order to secure Officer Cook's presence and to establish conclusively whether a statement had actually been taken from the defendant, and, if so, in what form and in whose possession it then was.

■ The prosecuting attorney's protestations notwithstanding, there was no duty on the defense attorney to seek out Officer Cook in order to obtain a copy of his client's statement. Once the Rule 16(a)(1)(A) request was made, the burden was on the Assistant District Attorney to use reasonable diligence prior to *and during* the trial to discover the existence of a statement and to provide the defendant with an opportunity to inspect and copy it.

Only if the prosecution can establish grounds for denial under Rule 16(e) may inspection be denied. *United States v. Isa,* 413 F.2d 244, 248 (7th Cir. 1969).

Nor was the defense attorney's oversight in failing to seek a subpoena for Officer Cook fatal in this instance. As one court noted when faced with a similar claim and the absence of any evidence of "sandbagging":

It is true, as the government argues, that defense counsel was not diligent in following up the information obtained at the preliminary hearing, despite its inaccuracy. The government failed to correct the misinformation, however, and we think under these circumstances [the defendant] should not suffer for the mistakes of his counsel.

*United States v. Poole*, 379 F.2d 645, 649 (7th Cir. 1967). *See also Barbee v. Warden*, *supra*, 331 F.2d at 845–46, in which the court noted that "[i]n gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel."

As we have previously noted, the record tends to establish a lack of diligence on the part of the prosecutor in failing to discover and produce the defendant's pretrial statement, apparently in writing and apparently in the possession of Officer Cook. But even if it could be established that the Assistant District Attorney had acted in good faith and it was the officer's fault that the statement had failed to come to light, this would be no defense. As one court has said:

... the effect of the nondisclosure [is not] neutralized because the prosecuting attorney was not shown to have had knowledge of the exculpatory evidence. Failure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposely, or negligently, withheld. And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure. [Footnote omitted.]

*Barbee v. Warden*, *supra*, 331 F.2d at 846. *See also United States v. Keogh*, 391 F.2d 138, 148 (2nd Cir. 1968) (holding that once a request for production is made, the "prosecution knows of the defense's interest and, if it has failed to honor this even in good faith, it has only itself to blame.")

Nor can the prosecutor's conduct in this case be justified by his announced purpose in withholding the defendant's statement, *i. e.*, to prevent him from tailoring his trial testimony to the statement given at the time of his arrest 17 months earlier. This "perjury theory" argument against discovery of a defendant's own statements was considered at length by Judge Frankel in *United States v. Projansky*, 44 F.R.D. 550 (S.D.N.Y.1968) and rejected, primarily because it is one-sided: it overlooks the fact that prosecution witnesses, "knowing they face cross-examination, are regularly and understandably refreshed in their recollection before taking the stand by reading their prior ... statements." *Id.* at 556.

Finally, it may be argued that any error in the State's failure to disclose and the trial court's refusal to order production has been rendered harmless because the statement was not introduced by the State at trial. However, as noted above, although never formally offered as an exhibit, the defendant's statement to police was used to impeach Hicks during cross-examination. Thus, we need not address the question of whether a Rule 16(a)(1)(A) violation can ever be harmless, for it clearly was not harmless here. *Cf. Branch v. State*, 4 Tenn. Cr.App. 164, 469 S.W.2d 533, 534–36 (1969). Moreover, when this denial of fundamental fairness to the defendant is coupled with still other errors in the record, we find that the total effect was to deprive him of a fair trial.

This additional problem arose as a result of repeated improper conduct by the prosecuting attorney. In his brief, the defendant catalogs numerous instances in which the Assistant District Attorney General was permitted to make a variety of prejudicial comments and arguments in the presence of the jury. The State insists that the defendant has waived the right to appellate re-

view of many of these instances of alleged misconduct because he did not specifically and contemporaneously object to them at trial. The State further urges that the remaining remarks, to which proper objection was made, did not "involve the substantial constitutional or statutory rights of the defendant and therefore did not prejudice his rights at trial."

Our review of the record convinces us, first, that many of the prosecutor's inflammatory remarks went unobjected to because of the general atmosphere of the courtroom, as described more particularly below. Secondly, we conclude that, while an isolated instance of prosecutorial misconduct of the kind found in this record might not entitle a criminal accused to a new trial, even though proper objections were entered, the cumulative effect of the prejudicial remarks in this case was such as to deprive the defendant of his constitutional right to a fair trial.

For example, during defense counsel's cross-examination of the victim, Larry D. Odum, a question was raised concerning Odum's testimony before the grand jury. Defense counsel was exploring the reasons why the grand jury issued the second indictment in the case, which charged the defendant alone with the crime, after the first indictment had charged the defendant and his brother, David Hicks jointly. The prosecuting attorney, without entering an objection, interrupted the proceedings and stated the following:

> Don't stand there and imply something. This boy just went in there and told the Grand Jury what happened. The Attorney General working the Grand Jury made an election as to who to prosecute in this matter. There was an indictment returned against Walter Hicks and David Hicks, but as the Court knows, that is one reason we stepped out a minute ago. *The position I have taken is that David Hicks did not do the cutting. That is the reason I am not prosecuting David Hicks.* But it was done under the guidance of the Attorney General. But this young man [Odum] doesn't do anything. No-

body indicts anybody. The Grand Jury does that. All he can do is go in there and tell the Grand Jury what occurred. *The reason I presume this man is here is because he is the one that did the cutting.* [Emphasis supplied.]

■ The prosecuting attorney thus in effect argued that because the grand jury charged the defendant with committing the assault on Larry Odum, the defendant must be presumed guilty. This argument is clearly improper and prejudicial.

The Sixth Circuit Court of Appeals examined a similar argument in *United States v. Bess*, 593 F.2d 749 (6th Cir. 1979). The prosecuting attorney in *Bess* stated the following in his closing argument:

> If the United States did not believe the defendant was guilty of committing these charges in the indictment, based on the evidence that has been presented to you, this case, of course, would never have been presented to you in the first place. . . .

After defense counsel objected and had his motion for a mistrial overruled, he emphasized during his segment of the argument that "whether a person is indicted is irrelevant to the final determination of guilt or innocence" and that "a person is presumed innocent until proved guilty beyond a reasonable doubt." The prosecuting attorney then stated the following in rebuttal:

> Ladies and Gentlemen, my concluding remarks in this case in response to the defendant's statement that I have decided the defendant's guilt or innocence, I merely told you in my argument based on the evidence that has been presented to you in this trial, *I believe beyond a reasonable doubt that the defendant unlawfully took or concealed the metal or ammunition.* (Emphasis added [in original]).

*United States v. Bess, supra,* 593 F.2d at 753.

The *Bess* Court expressed its "astonishment" that a prosecutor could make such statements, calling them "egregious" and holding that "it is always improper for a prosecutor to suggest that a defendant is guilty merely because he is being prose-

cuted or has been indicted." The Court found that the first statement quoted above "was in patent violation of this rule," and that both statements "violate the established rule that the personal opinion of counsel has no place at trial." *United States v. Bess, supra,* 593 F.2d at 753–54.

The statements by the prosecuting attorneys in both the instant case and in *Bess* clearly violated DR 7–106(C)(4) of the Code of Professional Responsibility of the American Bar Association, adopted in Tennessee by Rule 38, Tennessee Supreme Court Rules:

> DR 7–106 *Trial Conduct* (C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
>
> .    .    .    .    .
>
> (4) Assert his personal opinion as to the justness of a cause, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

*United States v. Bess, supra,* 593 F.2d at 754.

Also violated in both the instant case and in *Bess* was § 5.8 of the American Bar Association Standards Relating to the Prosecution Function, Approved Draft, 1971:

> (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

There can be no doubt that the statement made by the prosecuting attorney in the instant case was improper. *See generally Annotation,* Propriety and Prejudicial Effect of Prosecutor's Argument to Jury Indicating His Belief or Knowledge as to Guilt of Accused—Modern State Cases, 88 A.L. R.3d 449 (1978). *See also Judge v. State,* 539 S.W.2d 340, 343 (Tenn.Cr.App.1976).

The defendant urges that the prosecuting attorney improperly referred in his closing argument to defendant as using drugs on the night in question. The statement occurred as follows:

> PROSECUTING ATTORNEY: He [defendant] got drunk, probably on some drugs that his buddy sitting over there, his cousin, brought down there with him.
>
> DEFENSE COUNSEL: Objection, Your Honor, to the argument. There is no evidence of any drugs being taken.
>
> PROSECUTING ATTORNEY: There was proof that people were down there using them. Nobody has admitted it, I realize that.
>
> DEFENSE ATTORNEY: I would request that Your Honor rule on my objection.
>
> THE COURT: I overrule your objection. There was some testimony that drugs probably were being used down there that night.
>
> DEFENSE ATTORNEY: But not by the Defendant, Your Honor.
>
> THE COURT: By somebody. Go ahead, General.

The use of drugs on the night in question was mentioned only three times in the record. When asked if anyone was smoking "pot," the victim, Odum, testified that "[t]here probably was, but I didn't see it." The defendant was cross-examined by the prosecuting attorney as follows:

> PROSECUTING ATTORNEY: The truth of the matter is you were drunk and high on drugs?
>
> DEFENDANT: Not high on drugs.
>
> PROSECUTING ATTORNEY: Don't tell me you hadn't ever taken no drugs?
>
> DEFENDANT: I have smoked pot, but it was eight years ago, and I haven't since.

The other reference occurred during the cross-examination of the defendant's cousin, defense witness Chris Wright, as follows:

> PROSECUTING ATTORNEY: Of course, there were some drugs down there that night, wasn't there, too, Chris?
>
> WITNESS: I didn't see none.
>
> PROSECUTING ATTORNEY: You didn't take them down there?
>
> WITNESS: No, I didn't take any dope down there.

No evidence exists in the record to support the assertion by the prosecuting attorney that the defendant was "probably on some drugs" that night. The prosecuting attorney's argument was violative of the following section of the ABA Standards Relating to the Prosecution Function, Approved Draft, 1971:

§ 5.8(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

Additionally, the questions asked by the prosecuting attorney to both the defendant and Wright concerning the use of drugs were obviously intended to communicate impressions of drug use by innuendo. Our courts have responded to this practice as follows:

... the attempt to communicate impressions by innuendo through questions which are answered in the negative, when the questioner has no evidence to support the innuendo, is an improper tactic which has often been condemned by the courts. See 6 Wigmore, Evidence Sec. 1808(2) (1940).

*Bolin v. State*, 4 Tenn.Cr.App. 387, 472 S.W.2d 232, 235 (1971).

Questions similar in form to the ones asked in the instant case, also concerning drug use, were condemned as "exceed[ing] the bounds of advocacy and propriety" in *Wilson v. State*, 548 S.W.2d 323, 328 (Tenn. Cr.App.1976). The *Wilson* Court went on to state the following:

The questions themselves were framed so as to impart to the jury prejudicial and incompetent information, the correctness of which the average juror would expect to be within the knowledge of the District Attorney General.

*Wilson v. State, supra*, 548 S.W.2d at 328.

■ The innuendo-laden questions asked by the prosecuting attorney here and at many other points in the record were clearly improper. As is stated in the ABA Standards Relating to the Prosecution Function, Approved Draft, 1971:

§ 5.7(d) It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner cannot support by evidence.

The defendant also urges that the prosecuting attorney in effect "testified" improperly as to certain medical evidence involving an injury to the defendant's hand. After cross-examining the defendant as to this injury, which he stated was caused by the victim's knife and for which he stated he received no medical attention, the prosecuting attorney then proceeded to cross-examine defense witness David Hicks, the defendant's brother, as follows:

PROSECUTING ATTORNEY: Just like your brother—he didn't go to the doctor either, did he?

WITNESS: No, sir.

PROSECUTING ATTORNEY: Even though that scar looks like it had a stitch in it, did you notice that? It looked like there had been a stitch in that little scar in his hand?

DEFENSE COUNSEL: Your Honor, again, the General is testifying. If he wants to bring a doctor in here, let him present that. But I object to his presenting that in that manner the way he is doing it. That is not proper. I object, Your Honor.

PROSECUTING ATTORNEY: This jury saw it. If they think it is improper, they can disregard it.

THE COURT: Let it be overruled.

DEFENSE COUNSEL: Note our exception.

No evidence whatsoever had been adduced establishing that the defendant's wound "looked like there had been a stitch" in it. This argument was clearly improper, as it referred to a matter outside the record. *See* ABA Standards Relating to the Prosecution Function, § 5.8(a), *supra*.

■ The defendant further complains of the repeated handling and display by the prosecuting attorney, over the defendant's objection, of a knife, which the defendant admitted belonged to him, but which nevertheless was never in-

troduced into evidence or formally made an exhibit. Our Court has stated that "[t]he better practice is not to permit such items to remain in view of the jury unless they are to be received into evidence." *Lonnie Paul Cofer and Gerald Edward Hanvey v. State of Tennessee*, Court of Criminal Appeals at Jackson, February 10, 1977, at 3, citing 29 Am.Jur.2d *Evidence* § 771 (1967). In a case in which weapons which had never been introduced as proof were left in the sight of the jury, our Court warned that "we want to make it clear that this practice could, in some cases, result in reversible error and that counsel should endeavor not to display unadmitted evidence to the jury." *H. D. Reed v. State of Tennessee*, Court of Criminal Appeals at Nashville, October 14, 1977, at 3. *See also* ABA Standards Relating to the Prosecution Function § 5.6(c), Approved Draft, 1971, which states the following:

> It is unprofessional conduct for a prosecutor to permit any tangible evidence to be displayed in the view of the judge or jury which would tend to prejudice fair consideration by the judge or jury until such time as a good faith tender of such evidence is made.

Under the above-cited authorities, it is clear that the prosecuting attorney's handling and "waving around" of the knife, over defense objection and without offering it into evidence, was improper. The knife should have been either made an ex .ibit or kept out of sight.

While the defendant did not specifically object to the practice on each and every occasion it occurred, the prosecuting attorney in the case at bar time and again disrupted courtroom decorum by directing his remarks not to the court but directly to defense counsel. A few examples will suffice:

> "Don't stand here and imply something."
> "Then do it."
> "Wait a minute—are you going to ask him a question or are you going to make remarks?"
> "You are enough to confuse everybody else. You have got me confused and I object to it."

> "Why don't you ask him—if you want to know from personal observations...."
> "Your little trick didn't work."
> "Wait a minute. Now wait a minute. Don't get up there and say 'that's all'—sit down, son."
> "You object to them [sidebar comments] all the time anyway."
> "Wait a minute...Why don't you tell him [the witness] what you want him to say?"
> "If you would be quiet a minute, I would ask my question."

Despite all of the above instances, the prosecuting attorney was never instructed to address the court rather than defense counsel. By contrast, the record reflects that when defense counsel slipped on one occasion during the entirety of this arduous trial and addressed a remark directly to the prosecuting attorney, he was immediately admonished by the court, "Mr. Farmer, address your remarks to the bench."

The conduct of the prosecuting attorney in directing all of the above-cited remarks to defense counsel was clearly improper. The following rule is articulated in the ABA Standards Relating to the Prosecution Function, Approved Draft, 1971:

> § 5.2(b) When court is in session the prosecutor should address the court, not opposing counsel, on all matters relating to the case.

Numerous other instances of the prosecuting attorney's sarcastic ("I appreciate Mr. Farmer's concern about what I am fixing to do") and insulting ("Your Honor, I will have to take the stand, I guess, and explain this to Mr. Farmer") remarks may be culled from the record in this case. In this regard, It must be remembered that:

> [t]he prosecutor is an advocate, and is entitled to pursue his role with thoroughness and vigor. But, as set out in Justice Sutherland's classic opinion in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), the prosecutor also acts:
>
> > ... the representative not of an ordinary party to a controversy, but of a

sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions Of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Judge v. State, supra,* 539 S.W.2d at 344–45.

■ All of the comments and arguments by the prosecuting attorney which have thus far been discussed have been improper. Our Court in *Judge v. State, supra,* set out some five factors which must be considered in making the determination whether the improper conduct could have affected the verdict to the prejudice of the defendant, therefore requiring reversal on that basis alone. These factors are as follows:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2. The curative measures undertaken by the court and the prosecution.

3. The intent of the prosecutor in making the improper statement(s).

4. The cumulative effect of the improper conduct and any other errors in the record.

5. The relative strength or weakness of the case.

*Judge v. State, supra,* 539 S.W.2d at 344.

### 1. In Context of Case

With regard to the first factor, it is clear that the atmosphere in the courtroom during the trial of this case was at times heated. Almost all of the heat, however, came from the prosecuting attorney. Defense counsel maintained his "cool," and declined to resort to the improper tactics of opposing counsel, while through teeth-pulling efforts he tried to wrest rulings from the court on his objections. The prosecuting attorney's improper comments were numerous, some referring to evidence not in the record, and others laden with unwarranted and unsupportable innuendo.

### 2. Curative Measures

As has been amply demonstrated above, the trial judge often sided with the prosecuting attorney, overruling valid objections by and sometimes admonishing, defense counsel. The prosecuting attorney was only rarely cautioned by the court about his conduct. Time and time again, defense counsel was forced to ask the court two or even three times for a ruling on a defense objection.

### 3. Intent of the Prosecutor

"[A]lthough arguably the prejudicial effect to the defendant is the same regardless of the prosecutor's good or bad intent," *Judge v. State, supra,* 539 S.W.2d at 346, the number and variety of the improprieties and the vehemence with which they were offered here clearly indicate less than good faith on the part of the prosecuting attorney. For example, he apologized to the court for asking the victim an improper rebuttal question about the extent and permanence of the injury to his arm; yet he persisted in returning to that subject time and again in his questioning and argument.

### 4. Cumulative Effect

The cumulative effect of the prosecuting attorney's conduct, *i. e.,* his wilful failure to

comply with Rule 16(a)(1)(A) and his inflammatory remarks before the jury, was clearly harmful and prejudicial to the defendant's case.

### 5. *Relative Strength of Case*

The defendant admitted stabbing the victim in this case. The main issue at trial was the validity of the defendant's self-defense theory. The case against Hicks was certainly not airtight, and it would have been weaker still had not the prosecuting attorney: (i) improperly impeached the defendant's testimony that he received no medical treatment by "testifying" that the wound appeared to have been stitched; (ii) improperly cross-examined the defendant about drug-use with unsupportable innuendo-laden questions; (iii) improperly expressed his opinion that the defendant should be presumed guilty because he was being prosecuted; and (iv) improperly denigrated defense counsel both personally and professionally in the courtroom.

Under the standards outlined in *Judge, supra,* it is clear that the defendant's conviction cannot be upheld, regardless of the error in withholding pretrial statements from the defense after proper demand, because of the prosecuting attorney's prejudicial, unprofessional, and improper remarks.

For the reasons stated above, we reverse the judgment of the trial court and remand the case for a new trial.

O'BRIEN and SCOTT, JJ., concur.