IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 6, 2004 Session

## STATE OF TENNESSEE v. DAVID ROBERT COOK

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7298    Jon Kerry Blackwood, Judge**

_____

**No. W2003-00441-CCA-R3-CD  - Filed April 5, 2004**

_____

Defendant, David Robert Cook, was indicted for one count of second degree murder, a Class A felony, and one count of attempted second degree murder, a Class B felony.  Following a jury trial, the jury found Defendant not guilty of the indicted offenses but guilty of one count of voluntary manslaughter, a Class C felony, and one count of reckless aggravated assault, a Class D felony. The trial court sentenced Defendant as a Range I, standard offender, to three years imprisonment for the voluntary manslaughter conviction and two years imprisonment for the aggravated assault conviction.  The trial court ordered Defendant's sentence for aggravated assault to run concurrently with his sentence for voluntary manslaughter. On appeal, Defendant argues that (1) the evidence was insufficient to support his convictions; (2) the trial court erred in refusing to grant a mistrial because of prosecutorial misconduct during closing argument; and (3) the trial court erred in not sentencing Defendant as an especially mitigated offender.  The trial court did not err by refusing to grant a mistrial, the transcript of the sentencing hearing is not included in the appellate record and sentencing issues are therefore waived, and the evidence is sufficient to support Defendant's conviction for voluntary manslaughter.  Although not raised on appeal, we further conclude that the trial court committed plain error when it instructed the jury that reckless aggravated assault was a lesser included offense of attempted second degree murder.  Our supreme court has explicitly held that reckless aggravated assault is not a lesser included offense of attempted second degree murder. *State v. Rush*, 50 S.W.3d 424, 431 (Tenn. 2001).  Accordingly, we are obligated to reverse Defendant's conviction for reckless aggravated assault and remand for proceedings consistent with this opinion.  We affirm Defendant's conviction and sentence for voluntary manslaughter.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed as to Voluntary Manslaughter; Judgment of the Trial Court Reversed and Dismissed as to Reckless Aggravated Assault Conviction**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Michael W. Whitaker and Barney Witherington, Covington, Tennessee, for the appellant, David Robert Cook.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; Tracey Brewer, Assistant District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Donald Alberda and his friend, Ray Hayes, spent the afternoon of Sunday, May 5, 2002, driving around Ripley and drinking a 12-pack of beer. At various points in time during the afternoon, the men picked up two women friends, played some basketball, dropped the women off at their home, visited the VFW, and ultimately arrived at the Mega Mart in Ripley around 11:00 p.m. The Huddle House was next door to Mega Mart, and the two businesses shared a connecting door.

Mr. Alberda and Mr. Hayes purchased a soft drink at Mega Mart. Defendant was in the store at the same time, but Mr. Alberda did not know him and stated that there was no interaction between Mr. Hayes and Defendant. Mr. Alberda and Mr. Hayes left Mega Mart with their drinks, and Mr. Hayes said that he would pull over to the Huddle House side of the building. Mr. Hayes told Mr. Alberda that if Shelly, one of the waitresses, walked out to talk to them within five minutes, Mr. Hayes would not have to pay Mr. Alberda the bet he lost playing basketball earlier in the day.

Mr. Hayes parked his truck next to Defendant's white truck. Mr. Alberda said that Defendant walked out of the Huddle House and greeted Mr. Alberda as "Red" when he walked past Mr. Alberda's open window. Mr. Alberda told Defendant that he did not go by that nickname. Defendant backed up and insisted that "Red" was Mr. Alberda's nickname. Mr. Alberda disagreed again, and Mr. Hayes asked Defendant his name. When Defendant told him that his name was David Cook, Mr. Hayes replied that he was Kaitlyn's father. Mr. Hayes reminded Defendant that Defendant had jumped onto a school bus a month prior and accused Kaitlyn of hitting Defendant's daughter. Mr. Hayes asked Defendant twice to apologize for upsetting Kaitlyn, and twice Defendant refused. After Defendant's second refusal, Mr. Hayes got out of his truck, walked around the rear of the truck, and stopped at Mr. Alberda's window.

Mr. Alberda looked out of the truck's front window and saw that Defendant had a gun. Mr. Alberda said that Defendant did not say anything; he simply pointed the gun at Mr. Hayes and shot him. Mr. Hayes fell down, and Defendant turned as if he were going to run away. Mr. Alberda jumped out of the truck and grabbed Defendant by the wrist. Defendant twisted around and shot Mr. Alberda in the neck. Mr. Alberda, however, continued to hold on to Defendant until the police arrived. Defendant told Mr. Alberda that he shot Mr. Hayes in self-defense and would not spend a day in jail.

On cross-examination, Mr. Alberda admitted that he watched Mr. Hayes walk around the truck because he was not sure what Mr. Hayes was going to do, but he denied that Mr. Hayes was angry at the time. Mr. Alberda said that Mr. Hayes was upset that Defendant had made his daughter

cry. Mr. Alberda admitted that Mr. Hayes told him on two previous occasions that he was going to make Defendant apologize if he met him. Mr. Alberda said that when Mr. Hayes reached the passenger window of his truck, he pointed to the center of his chest and told Defendant, "If you pull that trigger, you better make that first shot count." Defendant shot Mr. Hayes approximately in the spot where Mr. Hayes was pointing. Mr. Alberda denied that Mr. Hayes was crouching when he pounded on his chest.

Mr. Alberda agreed that Mr. Hayes was six feet, three inches tall and weighed 281 pounds, that Mr. Alberda was also six feet, three inches tall and weighed 295 pounds, and that Defendant weighed about 139 pounds. Mr. Alberda conceded that Mr. Hayes could have caused Defendant bodily injury with his fists if he had so desired. Mr. Alberda said that he only grabbed Defendant after the shooting so that Defendant could not leave the scene.

Mr. Alberda said that he and Mr. Hayes only drank three beers apiece during the seven hours they were riding around, and that the two women they picked up also drank three beers each.

Curtis Hankins, Christie Harmon and Peggy Thomason were sitting in Huddle House by the front window when the incident occurred. All three observed two men outside of the restaurant pointing fingers at each other and agreed that the two men looked like they were going to fight. Mr. Hankins and Ms. Harmon said that they had seen Defendant in Huddle House picking up a to-go order, and all three witnesses said that Defendant was "hateful" toward the waitress.

On cross-examination, Mr. Hankins and Ms. Harmon both said that Defendant and Mr. Hayes were laughing right before the shooting. Ms. Harmon said that Mr. Alberda was in the truck when the shot was fired, but Ms. Thomason said that Mr. Alberda was standing behind Mr. Hayes when Defendant fired his gun. All three said that Defendant was standing on the curb. Ms. Harmon and Mr. Hankins denied that their view of the shooting was impeded by Mr. Hayes' truck, which was parked between the men and the front windows of the Huddle House. Mr. Hankins said that Defendant would not surrender his gun when the police came and kept repeating that he had a permit to carry the weapon. The police managed to take the gun from Defendant. Mr. Hankins said that Defendant did not appear scared, and both he and Ms. Harmon said that Mr. Hayes did not point to his chest. Mr. Hankins denied that he knew Mr. Hayes although he referred to the victim as "Ray-Ray" when he gave his statement to the police.

Kirk Kissell, a deputy sheriff with the Lauderdale County sheriff's department, responded at 11:17 p.m. to the call concerning the shooting at Mega Mart. He was not able to detect a pulse when he first examined Mr. Hayes, but he still administered CPR. The upper part of the victim's body was under Defendant's truck, and Deputy Kissell asked one of the paramedics to move Mr. Hayes' truck so he could have better access to the victim. Deputy Kissell said that the x-rays later taken at the hospital showed that the bullet had lodged in the victim's mediastinum, or the area around the heart. Deputy Kissell stated that the lack of powder burns around the entry wound indicated that the gun was not fired at a close range.

On cross-examination, Deputy Kissell said that he had known Mr. Hayes since the two men were teenagers and admitted that Mr. Hayes could have possibly caused injuries if he had struck Defendant with his fists. On redirect, Deputy Kissell agreed that Mr. Hayes was a "big Teddy bear" but admitted on recross-examination that he did not know that a restraining order had been taken out against Mr. Hayes for alleged domestic violence.

Susan Wakefield was the warrants clerk who processed Defendant after his arrest. She said that Defendant threw his gun permit and driver's license on the counter and said, "This is a bunch of b_ _ _ s_ _ _. My daddy will take care of it, and I have a permit for it." Ms. Wakefield said that Defendant did not look scared. On cross-examination, Ms. Wakefield admitted that Defendant also claimed that he acted in self-defense. She said that she did not know Mr. Hayes personally, but had previously worked with Mr. Hayes' ex-wife.

James Smith, an officer with the Ripley Police Department, stated that Defendant had bloodstains on his blue jeans and blood splatter on his left elbow. Officer Smith said that Defendant did not have any injuries that would have caused bleeding. Defendant told Officer Smith that Mr. Hayes "had jumped on him." Defendant said that he had done nothing wrong and just wanted to go home.

Steve Sanders, a lieutenant with the Ripley Police Department, took Defendant's statement following the shooting. Defendant said that he spoke to a man he thought was named "Red" as he was getting into his truck at the Huddle House. The man told Defendant his name was not Red, and Defendant told him again that his name was Red. Mr. Hayes at that point asked Defendant what his name was, and Defendant told him. Mr. Hayes got out of his truck and came around the vehicle until he was midway of the length of his truck and Defendant's truck. Defendant said that he backed up until he was even with the front bumpers of the two trucks but could not remember whether he stepped up on the curb. Mr. Hayes pointed at his chest and said something, and Defendant fired his gun. Defendant refused to sign a written statement.

Lieutenant Smith viewed Mega Mart's surveillance tapes and said that one frame showed Defendant standing about four or five feet away from the victims who were at the counter. The victims had moved outside the store when Defendant reached the counter. Another frame showed Defendant exiting the Huddle House with a white plastic sack. Lieutenant Smith said that Defendant's weapon was a .22 caliber derringer which had been fired twice. The distance around the back of Mr. Hayes' truck from the driver's side to the passenger side was thirty feet. Lieutenant Smith admitted that he charged Defendant with second degree murder before he conducted an investigation because he had to charge him with some offense in order to complete the booking process.

Dr. O. C. Smith, the medical examiner for Shelby County, performed the autopsy on Mr. Hayes and confirmed that Mr. Hayes died of a gunshot wound. Dr. Smith testified that the bullet passed through Mr. Hayes' sternum, then the aorta, trachea, and finally pierced the thoracic vertebra. The bullet traveled a downward trajectory of one inch and veered four-tenths of one inch to the right.

Based on the bullet's path, Dr. Smith said that the five-foot, two-inch victim could have been standing on the five-inch curb with the larger victim leaning forward slightly. Dr. Smith said that the bullet's path would have had more of a downward trajectory if the victim was in a crouching position when he was shot. The absence of stippling around the entry wound suggested that the gun was fired at a distance greater than two feet. Dr. Smith stated that the victim's alcohol level was .046 which would have caused some impairment in judgment and a delay in reaction time.

On cross-examination, Dr. Smith confirmed that the victim was six feet, three inches tall, weighed 281 pounds and was physically fit. He conceded that the consumption of three beers over the course of an afternoon and evening would not be consistent with an alcohol level of .046 for a man the size of Mr. Hayes. Dr. Smith said that it would take more than three 12-ounce beers to raise a 281-pound man's alcohol level to .046.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his convictions for voluntary manslaughter and reckless aggravated assault because he acted in self-defense when he shot Mr. Hayes and Mr. Alberda. Defendant submits that under the supreme court's decision in *State v. Renner*, 912 S.W.2d 701 (Tenn. 1995), the evidence clearly showed that Defendant did not provoke the confrontation, he was in a place in which he was lawfully entitled to be, and he was in fear of imminent bodily injury or harm from both victims.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the State in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

### A. Voluntary Manslaughter Conviction

Defendant was indicted for second degree murder which is defined as the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Defendant does not dispute that he knowingly shot Mr. Hayes. The jury, however, chose to convict Defendant of the lesser included offense of voluntary manslaughter. Voluntary manslaughter can also be a knowing killing, but is a knowing

or intentional killing that is committed "in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." *Id.* § -211(a).

As a general proposition, when a defendant could have been convicted of a higher degree of homicide, he or she may not later complain of being convicted of a lesser offense. *State v. Smith*, 695 S.W.2d 527, 529 (Tenn. 1985). Nonetheless, it is a defense to prosecution if a person's actions are justified as provided in Tennessee Code Annotated sections 39-11-601, *et seq*. Self-defense qualifies as a justification. Tenn. Code Ann. § 39-11-611; *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). As applicable in this case:

> (1) A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. §§ 39-11-60l(a) and (b).

It is for the jury to determine "whether the defendant's belief in imminent danger was reasonable, whether the force used was reasonable and whether the defendant was without fault." *State v. Renner*, 912 S.W.2d 701, 704 (Tenn. 1995); *see also State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994) (citing *State v. Williams*, 784 S. W.2d 660 (Tenn. Crim. App. 1989)). In this instance, the jury rejected Defendant's defense of self-defense as was its prerogative. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). It was also the jury's prerogative to determine the degree of homicide once it rejected Defendant's argument that he shot Mr. Hayes in self-defense. *State v. Shelton*, 854 S.W.2d 116, 119 (Tenn. Crim. App. 1992) (citing *State v. Estes*, 655 S.W.2d 179 (Tenn. Crim. App. 1983)).

The evidence was sufficient for a rational jury to conclude that Mr. Hayes, by getting out of his truck and walking around the vehicle to confront Defendant face to face when Defendant refused to apologize for upsetting Mr. Hayes' daughter, produced provocation, but that Defendant's action in shooting Mr. Hayes was excessive and unnecessary for self-defense. The incident occurred in a public place surrounded by patrons and employees of the two business establishments. Mr. Hayes, although unarmed, was nearly twice the size of Defendant. According to the testimony, however, Mr. Hayes did not make any threatening or aggressive moves toward Defendant other than walking around his truck, and the two men remained approximately six to seven feet apart during the entire confrontation. Defendant told Lieutenant Sanders that he and Mr. Hayes were "just talking" before Mr. Hayes got out of his truck, and their words were "not heated." After Mr. Hayes walked around the vehicle, Defendant said that Mr. Hayes "said something" while pointing to his chest, took a step, and Defendant shot him. Based on our review of the record, we conclude that there was sufficient

evidence to support the jury's verdict of voluntary manslaughter. Defendant is not entitled to relief on this issue.

## B. Reckless Aggravated Assault

The jury also rejected Defendant's defense of self-defense for the offense committed against Mr. Alberda. Although indicted for attempted second degree murder, a Class B felony, in Count II of the indictment, the jury convicted Defendant of reckless aggravated assault, a Class D felony, instead of the indicted offense of attempted second degree murder.

The record indicates that the trial court charged the jury under Count II that the following were lesser included offenses of attempted second degree murder: attempted voluntary manslaughter, reckless aggravated assault, and assault. The jury instructions are not included in the record, but the following transpired during the discussion between the trial court and counsel for both parties at the conclusion of the proof:

| | |
|---|---|
| THE COURT: | I want to talk about lesser included offenses. In the first count of the indictment the Court feels like the charges should be second, voluntary, reckless, and criminally negligent homicide. |
| [DEFENSE COUNSEL]: | Yes, sir. |
| THE COURT: | Any further requests from the defendant? |
| [DEFENSE COUNSEL]: | Not on Count 1, Your Honor. |
| THE COURT: | Count 2, the Court feels like that would be attempt to commit second, attempt to commit voluntary. Any further requests? |
| [DEFENSE COUNSEL]: | Assault and battery, Your Honor. Assault and battery, misdemeanor. |
| THE COURT: | All right. |
| [DEFENSE COUNSEL]: | Also I remind the Court, when the indictment is sent to the jury we need to expunge Count 3. |
| THE COURT: | The indictment does not go to the jury. |
| [DEFENSE COUNSEL]: | Okay. I just want to make sure of that. |

(Pause.)

| | |
|---|---|
| THE COURT: | All right. Let's bring the jury in. |
| [THE STATE]: | Your Honor, I know he asked for assault and battery, but my understanding is it's just assault. |
| THE COURT: | Assault. |
| [THE STATE]: | I would say aggravated assault would certainly be in there as well. Is that going to be the Court's instructions, will be the attempted second degree and attempted voluntary manslaughter and then aggravated assault and then misdemeanor assault? |
| THE COURT: | I think you also have to include in there aggravated assault by reckless conduct, too. |
| [THE STATE]: | Yes, sir. |
| [DEFENSE COUNSEL]: | We're going to have a charge that's about thirty minutes long. |
| THE COURT: | Yes, sir. Well, it's better than one Judge Craft did that was 93 pages long. |

Although not raised by Defendant as an issue on appeal, we conclude that the trial court committed plain error when it instructed the jury that reckless aggravated assault was a lesser included offense of attempted second degree murder. Issues which rise to the level of plain error may be considered at the discretion of the appellate court "(1) to prevent needless litigation; (2) to prevent injury to the interests of the public; and (3) to prevent prejudice to the judicial process, to prevent manifest injustice or do substantial justice." *State v. Adkisson*, 899 S.W.2d 626, 638-39 (Tenn. 1994). The appellate court should consider the following factors when determining whether an error constitutes "plain error:" (a) the record must clearly establish what occurred at the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the issue is necessary to do substantial justice. *Id.* at 641-42.

Defendant's case was tried in October, 2002. Over one year *prior* to Defendant's trial, our supreme court explicitly held that reckless aggravated assault is not a lesser included offense of attempted second degree murder. *Rush*, 50 S.W.3d at 431. This holding was recently reiterated by the supreme court in *State v. Hatfield*, ____ S.W.3d ____, No. M2002-00939-SC-R11-CD, slip op. at 4 (Tenn. Mar. 11, 2004). An accused in a criminal prosecution has the right to receive advance

notice of the charges he or she must defend. Tenn. Const. art. I, § 9. "Consequently, the accused may only be convicted of an offense enumerated in the indictment, or an offense that qualifies as a lesser-included offense thereof." *State v. Moore*, 77 S.W.3d 132, 134 (Tenn. 2002), citing *Hagner v. United States*, 285 U.S. 427, 431, 52 S. Ct. 417, 76 L. Ed. 2d 861 (1932); *Rush*, 50 S.W.3d at 427-28. Accordingly, reckless aggravated assault should not have been charged to the jury.

Tennessee Code Annotated section 40-18-110(d) does not require a different result. That code section specifically addresses lesser <u>included</u> offenses and not "lesser" offenses as in "less serious offenses." The supreme court has held, as noted above, that while reckless aggravated assault is a "lesser offense" than attempted second degree murder, it is <u>not</u> a lesser included offense of attempted second degree murder. *Rush*, 50 S.W.3d at 431-32.

Defendant's conviction for reckless aggravated assault is reversed. The jury at the first trial rejected the charges of attempted second degree murder and attempted voluntary manslaughter by finding Defendant guilty of reckless aggravated assault even though that offense is not a lesser included offense of attempted second degree murder. Under the guidelines provide in *Rush*, on remand, Defendant should be tried for any offenses which qualify under the *Burns* analysis as lesser included offenses of attempted second degree murder that either (1) were not originally charged, or (2) were charged but which are lesser offenses than reckless aggravated assault. *Rush*, 50 S.W.3d at 432.

## III. Prosecutorial Misconduct

Defendant argues that the prosecutor during closing argument improperly cast dispersions on Defendant's character by referring to him as "that little man" and a "daddy killer," and misstated the law by implying that Defendant had a duty to retreat during a confrontation.

We recognize that closing argument is a valuable privilege for both the State and the defendant, and our courts have generally extended counsel wide latitude in arguing their case before the jury. *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1994). Closing argument, however, is not without its boundaries, and counsel's comments "must be temperate, based upon the evidence at trial, relevant to the issues being tried, and not otherwise improper under the facts or the law." *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003) (citing *Coker v State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995)).

To merit a new trial, however, the questioned comments must be so improper or inflammatory as to affect the verdict. *Goltz*, 111 S.W.3d at 5 (citing *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965)). In measuring the prejudicial impact of the prosecutor's remarks, this Court should consider : "(1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case." *Id.* (*citing Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

Under the first set of objectionable comments, Defendant argues that the prosecutor's references to Defendant's height, "all five feet two of him," and the observation that Defendant's gun made "him feel like a bigger man" were improper. Defendant, however, concedes that he did not object to these comments at trial. Any error attached to these statements have thus been waived for purposes of appeal. Tenn. R. App. P. 36(a); *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (Failure to object to any alleged prosecutorial misconduct during closing argument waives any later complaint.)

Defendant, however, did contemporaneously object to the prosecutor's remark that "[i]t was the defendant that had that little man complex that he wanted to carry a bigger gun. . ." Following Defendant's objection, the trial court told the prosecutor "to move on" but did not issue a contemporaneous curative instruction to the jury. While such an instruction would have been preferable, the State complied with the trial court's directive and appears to clarify over the next few statements that the State, in its argument, was attempting to dispel the defense's suggestion that this was "a case of a little man versus a bigger man." As the State points out in its brief, Defendant made the size of the three men an issue at trial, and the State's comments about Defendant's size were thus proper.

Although size may have been a factor in the presentation of Defendant's defense, there was no evidence presented concerning Defendant's psychological profile which may be inferred from the common meaning associated with the term, "a little man complex." Nonetheless, based on the evidence presented and the context of the remark within the State's closing argument, we cannot conclude that this comment affected the jury's verdict to Defendant's prejudice.

More troubling is the prosecutor's description of Defendant as a "daddy killer." The prosecutor remarked, "[j]ust like the defense brought out about the sniper, that sniper killer gets a fair trial, just like this daddy killer does." The trial court overruled Defendant's request for a mistrial and instructed the jury to disregard the prosecutor's comment. Despite the fact that Defendant did not deny that he killed Mr. Hayes or that Mr. Hayes was a father, counsel should generally refrain from making appeals to the jury's emotions or sympathies or using epithets to describe the defendant. *State v. Cribbs*, 967 S.W.2d 773, 786 (Tenn. 1998); *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998) (calling the defendant "the evil one"); *State v. Bates*, 804 S.W.2d 868, 881 (Tenn. 1991) (calling the defendant a "rabid dog"). This Court has previously concluded that the State's repeated observations during closing argument that a victim's six-year-old daughter no longer has a father were improper. *State v. Hinton*, 42 S.W.3d 113, 128 (Tenn. Crim. App. 2000).

However, considering the evidence presented and the curative instruction provided by the trial court, we cannot conclude that this comment affected the jury's verdict. *See Judge*, 539 S.W.2d at 344.

Defendant argues that the State misstated the law on self-defense on three different occasions by implying that Defendant had a duty to retreat from the confrontation with Mr. Hayes if possible. *See* Tenn. Code Ann. § 39-11-611 (There is no duty to retreat before a person threatens or uses

force.) The State, on the other hand, contends that Defendant misconstrues its comments and argues that it was merely attempting to show that Defendant, by consciously making a series of choices during the incident, knowingly shot the victims.

Viewing the comments within the context of closing argument, the prosecutor argued,

What is knowingly? Who carried a loaded gun? David Cook, the defendant. Who did not get in his truck, ladies and gentlemen, when they were parked side by side and the victim gets out to walk around? The defendant did not get in his truck at this time. No, he did not. Who did not go in the Huddle House? That defendant. Who backed up to the Huddle House and could have walked right inside that door? Who did not do that? Who knowingly . . .

Following Defendant's objection, the trial court instructed the jury that the court would inform them as to the law raised by the case. The State then continued its analysis of what Defendant knowingly did right before Mr. Hayes was shot.

Defendant argues that the prosecutor later asked on two occasions whether Mr. Hayes trapped or cornered Defendant. Defendant objected on the grounds that the prosecutor was again arguing a duty to retreat and moved for a mistrial. The trial court denied Defendant's request for a mistrial and instructed the jury on both occasions that the trial court would instruct them as to the law.

This Court has previously recognized that "[i]t is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw." *Goltz*, 111 S.W.2d at 5 (citations omitted). *See also State v. Phillpott*, 882 S.W.2d 394, 408 (Tenn. Crim. App. 1994); *State v. Hicks*, 618 S.W.2d 510, 519 (Tenn. Crim. App. 1981). A review of the State's closing argument in its entirety, however, indicates that it was the State's intent through its comments to illustrate that Defendant acted knowingly and without provocation when he shot the victims. Although certain remarks in isolation could be interpreted to suggest that Defendant should have retreated from the confrontation, the defense thoroughly addressed the issue of retreat in his own closing argument. The trial court told the jury on each occasion that they would be instructed as to the applicable law, and, in the absence of a copy of the trial court's instructions to the jury in the record, we must assume that the trial court correctly instructed the jury as to the law of self-defense. *State v. Arnold*, 719 S.W.2d 543, 550 (Tenn. Crim. App. 1986). Defendant is not entitled to relief on this issue.

## IV. Sentencing Issues

Defendant argues that the trial court erred in not sentencing him as an especially mitigated offender under Tennessee Code Annotated section 40-35-109. Defendant, however, failed to include a transcript of the sentencing hearing in the record. *See* Tenn. R. App. P. 24(b). When presented with an incomplete record, this Court must presume that the trial court's rulings are correct. *State v. Cooper*, 736 S.W.2d 125, 131 (Tenn. Crim. App. 1987). Therefore, all issues concerning the

length or manner of service of Defendant's sentences are waived. *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998); *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993).

## CONCLUSION

Based on a review of the record in this matter, we affirm Defendant's conviction and sentence for voluntary manslaughter. We reverse Defendant's conviction for reckless aggravated assault and remand to the trial court for proceedings consistent with this opinion.

_____
THOMAS T. WOODALL, JUDGE