FILED

05/21/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2026 Session[1]

## STATE OF TENNESSEE v. ELLIOT ARNAZ PRICE

**Appeal from the Criminal Court for Knox County**
**No. 122506   Hector Sanchez, Judge**

_____

**No. E2025-00035-CCA-R3-CD**

_____


Defendant, Elliot Arnaz Price, was indicted by the Knox County Grand Jury for one count of burglary. After trial, a petit jury convicted Defendant as charged. The trial court classified Defendant as a career offender and sentenced him to an effective sentence of twelve years' incarceration. On appeal, Defendant argues (1) the evidence was insufficient to support his conviction for burglary; (2) the trial court committed reversible error in violation of Tennessee Rules of Evidence 608 and 609 by admitting evidence of Defendant's prior charge for burglary and of Defendant's conduct underlying the burglary charge; (3) the trial court committed reversible error by classifying him as a career offender; (4) the trial court committed plain error in violation of Defendant's confrontation rights by admitting the arresting officer's affidavit from a prior theft case; and (5) the trial court committed plain error by improperly instructing the jury that the "without the consent of the property owner" element of burglary applied to Defendant's "actions" rather than Defendant's "entry" onto the victim's property.[2] After review, we conclude there are instances of error made by the trial court, but determine such errors were harmless and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

Eric Lutton, District Public Defender; Jonathan Harwell (on appeal) and Preston Pierce (at trial), Assistant Public Defenders, Knoxville, Tennessee, for the appellant, Elliot Arnaz Price.

---

[1] Oral argument was heard in this case at the Winston College of Law, on the campus of the University of Tennessee Knoxville.

[2] We have rearranged the presentation of Defendant's issues for clarity.

Jonathan Skrmetti, Attorney General and Reporter; Courtney N. Orr, Deputy Attorney General; Charme P. Allen, District Attorney General; and Takisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arose from Defendant's burglary of West Town Mall in Knox County, Tennessee, on June 27, 2022. West Town Mall is a typical mall consisting of several individual businesses situated around the West Town Mall property. These businesses included retail stores, restaurants, and a movie theater. West Town Mall also provided parking areas for customers, including a parking garage. A map of West Town Mall's interior was admitted into evidence.

Dennis Morgan was employed as a camera operator for Dillard's department store ["Dillard's"] located within West Town Mall. On the day of Defendant's burglary, Mr. Morgan was operating the security cameras when he observed Defendant enter Dillard's. Defendant "started looking around suspiciously" before positioning himself behind a clothing rack, partially obstructing the camera's view. Defendant removed a Psycho Bunny shirt from a clothes hanger hanging on the clothing rack. With the Psycho Bunny shirt in one hand, Defendant picked up another white shirt with his other hand. He then used the clothes rack and the white shirt as a "shield" to hide his concealing the Psycho Bunny shirt in his pants. Mr. Morgan promptly reported the theft to Glenn Martin, a law enforcement officer for the Knox County Sheriff's Department serving as Dillard's security guard.

Officer Martin confronted Defendant and instructed him to remove any merchandise from his person. Defendant initially only returned the white shirt to the clothing rack, and Officer Martin escorted Defendant to an upstairs office in Dillard's. While Officer Martin and Defendant were on the escalator, Defendant produced the Psycho Bunny shirt from somewhere on his person. Once in the upstairs office, the Dillard's manager read and issued a trespass notice to Defendant prohibiting him from entering "the premise of any Dillard's in the United States." Defendant signed the trespass notice and was provided with a copy. An unnamed West Town Mall security guard also explained and issued a trespass notice against Defendant prohibiting him from entering the "entire mall property." Defendant also signed the second notice and was provided with a copy. However, before leaving the Dillard's office, Officer Martin discovered that Defendant was previously banned from West Town Mall based on Defendant's prior theft from Belk department store

- 2 -

["Belk"] in West Town Mall. Officer Martin arrested Defendant, alleging that he had committed a burglary of West Town Mall.

Cassidy Dodge, a security guard employed by the third-party security company Allied Universal, testified regarding the prior Belk incident. Ms. Dodge explained that West Town Mall contracted Allied Universal to provide security services for the mall and to "uphold[ the mall's] code of conduct," which included issuing "bans or trespass[es]" and "helping customers as well as retailers." Ms. Dodge was assigned to provide security services for West Town Mall, and she testified that she was authorized to issue trespass notices based on an individual's violation of the code of conduct. She explained, "[W]henever someone st[ole] from the individual retails, [Allied Universal] ban[ned] them from the mall depending on how much they stole, what they stole, [and] the circumstances."

On December 12, 2021, the Belk department store in West Town Mall contacted Ms. Dodge about a theft committed by Defendant in its store. Ms. Dodge confronted Defendant and brought him to a room in the "back area" of Belk. Ms. Dodge asked Defendant his name, and Defendant provided her with a false name. Ms. Dodge then explained and issued a trespass notice, referred to by the parties as the "barment form," against Defendant prohibiting him from entering West Town Mall property. She testified that when she explained the barment form to Defendant, she "talk[ed] about what it is and what the boundaries are for it. [She] t[old him] how long it's going to be, and [that] the parking garage and all the different areas that aren't necessarily attached to the mall itself [is] West Town Mall property[.]" Ms. Dodge originally banned Defendant for one year, but when law enforcement arrived and discovered Defendant's real identity, Ms. Dodge issued an amended barment form against Defendant that increased the duration of the ban to two years. Ms. Dodge testified that Defendant "seem[ed] to understand" the scope of the barment form. Ms. Dodge testified that the barment form was not rescinded "to [her] knowledge at any point after December 12[,] 2021."

The barment form, as amended, provided that Defendant was "barred from West Town Mall and the entire property thereof, including the parking areas," for a period of two years. It further explained, "[I]f [Defendant] return[ed] to West Town Mall before the barring period had ended, it shall constitute trespassing and subject [Defendant] to prosecution[.]" The barment form was signed by the responding law enforcement officer, Jordan Fairbank.[3] Defendant did not sign the barment form because he was in handcuffs at the time it was prepared. Defendant did not receive a copy of the barment form.

---

[3] Officer Fairbank's name appears in the record as being both "Fairbank" and "Fairbanks." We will use "Fairbank," the spelling reflected on Defendant's arrest warrant in the Belk's case.

Defendant admitted that he committed a theft at Belk in West Town Mall on December 12, 2021. He explained that he spoke with Belk personnel for around one and a half hours after being confronted about the theft. However, he denied having the barment form "in front of [him] or anything like that." He also denied that Ms. Dodge explained the barment form to him, claiming, "[T]he only thing that Ms. Dodge said to me was that I was going to be banned for a year." He further testified that Ms. Dodge stated that he was banned "from here" while he and Ms. Dodge were in the back room of Belk, so he "assumed it was Belk[] [he was banned from because] that's where I had got [caught] shoplifting from." Defendant testified that he was never asked to sign the barment form and that he was never provided a copy. Finally, Defendant claimed that he was unaware that he could be charged with burglary for entering Dillard's. He explained that "the first time that [he] learned about if you come back somewhere that it would be burglary or a felony" was after being confronted by security at Dillard's.

The jury found Defendant guilty as charged, and after a sentencing hearing, the trial court sentenced Defendant to an effective sentence of twelve years' incarceration as a career offender. Defendant moved for a new trial, but the trial court denied the motion. Defendant appeals.

*Analysis*

*Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to support his conviction for burglary because the State failed to establish that (1) Defendant lacked the effective consent of the property owner to enter Dillard's, (2) Ms. Dodge had the authority to revoke the property owner's consent to Defendant's entering West Town Mall property, (3) Defendant's ban from West Town Mall effective from December 12, 2021, had not been rescinded prior to Defendant's entry into Dillard's, and (4) West Town Mall was not a habitation. The State argues that the evidence was sufficient to support Defendant's burglary conviction. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

As charged in this case, "a person commits burglary who without the consent of the property owner . . . enters a building other than a habitation, or any portion of the building, not open to the public, with intent to commit a . . . theft[.]" T.C.A. § 39-13-1002(a)(1). "Owner" is generally defined as "a person in lawful possession of property whether the possession is actual or constructive[.]" *Id.* § -14-401(3). "Habitation" includes "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons[.]" *Id.* § -401(1)(A). A person acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* § -11-302(a).

In the light most favorable to the State, the evidence at trial showed the Defendant was banned from the entire West Town Mall property for a period of two years beginning December 12, 2021. The ban resulted from Defendant's stealing from the Belk in West Town Mall. On the day of the Belk incident, Ms. Dodge explained to Defendant that he was banned from the entirety of West Town Mall, and Defendant "seem[ed] to understand" the scope of the ban. The terms of Defendant's ban from West Town Mall were memorialized in the barment form, which reiterated that Defendant was "barred from West Town Mall and the entire property thereof, including the parking areas," for a period of two years and informed Defendant that returning to West Town Mall property could "subject [him] to prosecution[.]" Less than eight months later, Defendant returned to West Town Mall on June 27, 2022, and entered Dillard's. While inside Dillard's, Defendant attempted to steal a Psycho Bunny shirt but was thwarted by Officer Martin's confronting him. This is sufficient evidence for a rational jury to conclude that Defendant "without the

consent of [West Town Mall], enter[ed] [West Town Mall] with intent to commit a . . . theft[.]" *See* T.C.A. § 39-13-1002(a)(1).

Defendant rebuts that the relevant property owner in this case was not West Town Mall but rather Dillard's. To be clear, Defendant does *not* argue that the evidence was insufficient to show that West Town Mall was "in lawful possession" of the property onto which Defendant trespassed. Instead, Defendant posits that there can only be one "owner" for purposes of the burglary statute and that Dillard's—not West Town Mall—is the sole statutory "owner." On this point, Defendant asserts that the State introduced "no proof of prior exclusions or prohibitions from Dillard's." Defendant maintains, "At best[], the State tried to prove that [Defendant] did not have the effective consent of West Town Mall to enter the premises in general[, b]ut that was not the relevant question."

Defendant's argument relies on the premise that there can only be one "owner" for purposes of the burglary statute. We disagree with this premise. While no Tennessee case has directly considered the issue, caselaw contemplates that there may be more than one statutory "owner" under the burglary statute. *See State v. Spencer*, No. M2018-02181-CCA-R3-CD, 2020 WL 563619, at *6 (Tenn. Crim. App. Feb. 5, 2020) (finding that one of the multiple inhabitants of a boarding house was the "owner" of all "common areas" of the boarding house), *no perm. app. filed*; *see also State v. Tucker*, No. M2001-02298-CCA-R3-CD, 2002 WL 1574998, at *9 (Tenn. Crim. App. July 17, 2002) (holding that a husband could not burglarize a house he held in joint tenancy by the entirety with his wife because he was also an "owner" of the house), *perm. app. denied*. Therefore, we conclude that there may be multiple "owners" for purposes of the burglary statute.[4] Because Defendant does not contest that West Town Mall was "in lawful possession" of Dillard's in West Town Mall, we assume that West Town Mall is also an "owner" of Dillard's under the burglary statute for purposes of this appeal. *See* T.C.A. § 39-14-401(3).

Defendant responds that even if there can be two or more "owners" of a property under the burglary statute, the State was required to show that Defendant's entry into Dillard's was without "the effective consent" of both West Town Mall and Dillard's. He submits that the evidence was insufficient to show that Dillard's acquiesced in Defendant's ban from its store. Even assuming Defendant is correct that the State in a burglary prosecution must establish that a defendant lacked the consent of all owners to enter the relevant property, the evidence was sufficient to show that Dillard's acquiesced in

---

[4] Defendant cites *State v. Langford*, 994 S.W.2d 126 (Tenn. 1999), as authority to the contrary, but Defendant's reliance on *Langford* is misplaced. In *Langford*, this Court found that the victim was "the 'person in lawful possession' of the [burglarized] property" because she rented the property and had her name on the lease. *Id.* at 128. However, the Court was not presented with the question of whether there could only be one owner for purposes of the burglary statute. *See generally id.* Consequently, *Langford* provides no instruction on this issue.

Defendant's ban from the entirety of West Town Mall, including its own store. Ms. Dodge testified that Allied Universal, her employer, was contracted by West Town Mall to "uphold[] the code of conduct" established by West Town Mall. She explained that the code of conduct included issuing "bans or trespass[es]" and "helping with customers as well as retailers." She further testified that pursuant to the code of conduct, "whenever someone st[ole] from the individual retails, [Allied Universal] ban[ned] them from the mall depending on how much they stole, what they stole, [and] the circumstances." Moreover, Dillard's conduct following the June 2022 incident—when a Dillard's manager independently issued a trespass notice to Defendant—is consistent with and corroborates the existing arrangement described above. After Defendant was confronted in Dillard's for his attempted theft of the Psycho Bunny shirt, he was taken to an upstairs office in Dillard's, where *both* a Dillard's manager and a West Town Mall security guard issued trespass notices to Defendant. The Dillard's manager explained that Defendant was banned from "the premise of any Dillard's in the United States[,]" and the security guard explained that Defendant was banned from the "entire mall property." Based on this evidence, a rational jury could infer that Dillard's, pursuant to the code of conduct and as an individual retailer within West Town Mall, consented to West Town Mall's banning Defendant from the entirety of the West Town Mall property, including the Dillard's store, based on Defendant's theft from Belk.

Defendant further argues that there was insufficient evidence to show that West Town Mall authorized Ms. Dodge to ban Defendant from West Town Mall. However, the record contradicts Defendant's argument. Ms. Dodge specifically testified that she worked for Allied Universal, a security company hired by West Town Mall to "uphold[ its] code of conduct[.]" Ms. Dodge testified that Allied Universal was authorized to "ban[] and trespass[]" people from West Town Mall based on thefts from individual retailers within the mall. That is exactly what happened in this case—Ms. Dodge, as an employee of Allied Universal, banned Defendant from West Town Mall based on his theft from Belk. Defendant also asserts that there was insufficient evidence that Defendant's ban from West Town Mall was not rescinded prior to his entry into Dillard's. Once again, the record belies Defendant's claim. Ms. Dodge testified that on December 12, 2021, she banned Defendant from the entire West Town Mall property for two years. Defendant's entry into Dillard's in this case occurred on June 27, 2022, well before the two-year ban expired. Ms. Dodge testified that the ban had not been rescinded "to [her] knowledge at any point after December 12[,] 2021." Based on Ms. Dodge's testimony, a rational jury could conclude that Ms. Dodge had the authority to ban Defendant from West Town Mall and that the ban was not rescinded before Defendant's entry into Dillard's on June 27, 2022.

Finally, Defendant argues that the State introduced insufficient evidence to show that West Town Mall was "not a habitation." We disagree. The evidence at trial indicated that West Town Mall consisted of individual businesses that included retail stores,

restaurants, and a movie theater.  The map of West Town Mall introduced at trial depicts the interior of the West Town Mall and many of the individual businesses that occupied space in the mall.  Nothing in the map nor in the witnesses' testimony indicates that any portion of the West Town Mall was "designed or adapted for the overnight accommodation of persons[.]"  *Id.* § 39-14-401(1)(A).  Indeed, nothing in the record indicates that the West Town Mall was anything other than a typical mall.  Based upon this evidence, a rational jury could conclude that the West Town Mall was a "building other than a habitation."  *See id.*; *see also id.* § -13-1002(a)(1).  Defendant is not entitled to relief on this issue.

*Tennessee Rules of Evidence 608(b) and 609*

Defendant argues that the trial court abused its discretion and violated Tennessee Rules of Evidence 609 and 608(b) by admitting extrinsic evidence of his initial charge for burglary and his underlying conduct in the Belk case.  The State argues that the trial court did not abuse its discretion.  We agree with the State.

Generally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]"  Tenn. R. Evid. 404(a).  However, Tennessee Rules of Evidence 609 and 608 provide exceptions to this general prohibition where a party seeks to establish a witness's character for truthfulness or untruthfulness.  Tenn. R. Evid. 404(a)(3).

Under Rule 609, a party may impeach a witness's character for truthfulness by using evidence of the witness's prior convictions if "[t]he crime [is] punishable by death or imprisonment in excess of one year [or] involved dishonesty or false statement."  Tenn. R. Evid. 609(a)(2).  If the witness being impeached is the defendant, "the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues."  Tenn. R. Evid. 609(a)(3).  Only where "the witness denies having been convicted, the conviction may be established by public record."  Tenn. R. Evid. 609(a)(1).  Notably, "mere indictments, charges and accusations of some particular offense" may not be inquired into under Rule 609.  *Wilson v. State*, 548 S.W.2d 323, 328 (Tenn. Crim. App. 1976).

Under Rule 608(b), the State generally may impeach a witness regarding the witness's prior conduct, including conduct underlying a charge, if the conduct is "probative of [the witness's] truthfulness or untruthfulness[.]"  Tenn. R. Evid. 608(b).  If the witness to be cross-examined regarding his or her prior conduct is the defendant, the "the court upon request must determine that the conduct's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues."  Tenn. R. Evid 608(b)(3).  However, "[s]pecific instances of conduct of a witness for the purpose of attacking or supporting the

witness's character for truthfulness, other than convictions of a crime as provided in Rule 609, may not be proved by extrinsic evidence." Tenn R. Evid. 608(b).

The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion in the absence of a clear showing of abuse appearing on the face of the record. *See State v. McCoy*, 459 S.W.3d 1, 8 (Tenn. 2014); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993). An abuse of discretion occurs when the trial court (1) applies an incorrect legal standard; (2) reaches an illogical or unreasonable decision; or (3) bases its decision on a clearly erroneous assessment of the evidence. *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Based upon Defendant's conduct in the Belk case, he was initially charged with burglary, but he later pleaded guilty to misdemeanor theft. After its case-in-chief at trial but prior to Defendant's testifying, the State requested the trial court to allow cross-examination of Defendant regarding his misdemeanor theft conviction. The trial court granted the State's request pursuant to Rule 609, finding that "the misdemeanor theft [was] a crime involving dishonesty[.]"

During his direct testimony, Defendant claimed that he was charged with criminal impersonation in the Belk case. Based on his testimony, the State sought to impeach Defendant on cross-examination by admitting into evidence Defendant's judgment form from the Belk case reflecting his original charge for burglary. The State further argued that the judgment form was relevant to show Defendant's "intent and knowledge about what he was doing" by returning to West Town Mall on June 27, 2022. Defense counsel objected to the judgment form's admission, arguing that extrinsic evidence of a charge is inadmissible under Rule 608(b). The trial court overruled Defendant's objection, and the State asked Defendant, "You weren't charged with criminal impersonation, were you?" Defendant responded, "I can't remember if I was or not. I don't know if they dropped it or not." Taking note of Defendant's prior objection, the trial court admitted the judgment form upon the State's motion ("Exhibit 10").

Exhibit 10 consisted of two pages. The first page was the judgment form reflecting Defendant's "Misd[emeanor] [t]heft" conviction in the Belk case and provided that Defendant's charged offense was "BURGLARY—OTHER THAN HABITATION[.]" The second page included Defendant's arrest warrant in the Belk case accompanied by an "Affidavit of Complaint." The arrest warrant reiterated that Defendant was charged with "BURGLARY—OTHER THAN HABITATION[.]" The Affidavit of Complaint detailed the events underlying the Belk case as follows:

This incident occurred on or about Sunday, December 12, 2021[.] Upon arrival, [Officer Fairbank] spoke with [Belk's loss prevention officer] who stated that [Defendant] had been spotted cutting sensors off of unpaid goods in an attempt to deprive the victim. The goods added up to $333.50. While [Officer Fairbank] made contact with [] Defendant, he stated he did not have any identification on his person[] and did not know his Social Security Number. . . . Once officers made the determination [] Defendant was going to jail due to him having an out[-]of[-]city address and not knowing exactly who he was, [] Defendant admitted that he was in fact lying about who he was. Once [Belk] ran [] Defendant's correct name in their system[,] it showed that he was trespassed from all Belk[s] on 4-16-2021 for a five[-]year period[.]

In its closing arguments, the State relied on evidence of Defendant's initial charge for burglary in the Belk case. Specifically, the State argued that Defendant had a motive to lie about his not understanding that he was banned from the entirety of West Town Mall because "he didn't want to get charged with burglary like he was on December 12, 2021. Because he knew that if he got caught going back there, it's a burglary."

During its deliberations, the jury asked the trial court three questions. One of these questions, relevant here, read, "Why was [Defendant] charged with [b]urglary for the Belk offense?" The trial court responded, "Your duty as jurors in this case is to decide this case based upon the law the court provided as well as the evidence that was introduced/testified to at trial." Defendant did not object to the trial court's answer.

In his motion for new trial, Defendant argued that the trial court erred by admitting Exhibit 10. He asserted that Exhibit 10 was a "highly prejudicial piece of propensity, character evidence" because it included extrinsic evidence of Defendant's prior charge for burglary. Defendant also argued that its admission was harmful because "[o]ne of the questions, provided to the [trial c]ourt by jurors after retiring to the jury room to deliberate, centered around [Exhibit 10's mentioning of] the charge of burglary, clearly showing that jurors considered [Exhibit 10] in reaching a verdict."

In its order ruling on Defendant's motion for new trial, the trial court "acknowledge[d] that [Rule 608(b) and 609] were not followed." The trial court noted that "it failed to determine whether the [theft] conviction's probative value on credibility outweighed its unfair prejudicial effect on the substantive issues." Furthermore, the trial court found that admission of Exhibit 10 was erroneous because it constituted extrinsic evidence of Defendant's prior charge of burglary. *See Wilson*, 548 S.W.2d at 328. Nevertheless, "considering all of the other evidence in the case, including a very clear surveillance video depicting [] Defendant attempting to steal a [Psycho Bunny] shirt," the

trial court concluded that "any error was harmless considering the totality of the proof." Based upon this conclusion, the trial court denied Defendant's motion for new trial.

Defendant argues that the trial court abused its discretion and violated Rules 609 and 608(b) by admitting Exhibit 10 because it constituted extrinsic evidence of his initial charge for burglary and his underlying conduct in the Belk case. The State concedes that extrinsic evidence of Defendant's burglary charge was inadmissible under Rules 609 and 608(b) but asserts that Defendant "opened the door" to admission of such evidence by "repeatedly claim[ing] he was not aware that he could be charged with burglary if he returned to the mall to steal . . . until after he was arrested for the Dillard's incident[.]" However, the State concedes that evidence of Defendant's underlying conduct in the Belk case provided in the Affidavit of Complaint was erroneously admitted, but it submits that such error was harmless because "much of the information in the [Affidavit of Complaint] was [either] cumulative to other evidence introduced at trial [or] inconsequential in light of overwhelming evidence of [D]efendant's guilt." Defendant avers that any error is not harmless, emphasizing that the State relied on Defendant's charge for burglary in its closing argument and that the jury asked the trial court, "Why was [Defendant] charged with burglary for the Belk offense?" After reviewing the entirety of the record, we agree with the trial court that such error was harmless.

Evidentiary errors are "non-constitutional errors" subject to "the harmless error analysis of Tenn[essee] R[ule of] App[elate] P[rocedure] 36(b)." *State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014). For non-constitutional errors, "the defendant bears the burden of showing that the erroneous evidence 'more probably than not' affected the verdict." *Id.* (citing Tenn. R. App. P. 36(b)). When conducting a harmless error analysis, "we review the entire record in order to ascertain the actual evidentiary basis for the jury's verdict." *Id.* at 288. "When the error more probably than not had a substantial and injurious impact on the jury's decision-making process, it is not harmless." *Id.* However, "the more evidence there is to support the defendant's guilt, the more likely it will be that the error was harmless." *Id.* (citing *State v. Rodriguez*, 254 S.W.3d 361, 371-72 (Tenn. 2008)).

While we recognize that the jury directly inquired into the reason that Defendant was initially charged with burglary in the Belk case and that the State relied on such fact in its closing argument to discredit Defendant's testimony, the countervailing evidence of Defendant's guilt was overwhelming. At trial, Ms. Dodge testified that she confronted Defendant regarding a theft he committed at Belk in West Town Mall on December 12, 2021. She testified that she spoke with Defendant, who provided her with a false name. She testified that she filled out a barment form that originally banned Defendant from West Town Mall for one year and that she explained the barment form to him. She testified that she "t[old Defendant] how long [the ban was] going to be, and [that] the parking garage and all the different areas that aren't necessarily attached to the mall itself [is] West Town

Mall property[.]" She testified that when law enforcement discovered Defendant's real identity, she increased the duration of the ban by an additional year. The barment form itself provided that Defendant was prohibited from entering "West Town Mall and the entire property thereof" for two years and explained that if Defendant "returned to West Town Mall before the barring period had ended, it shall constitute trespassing and subject [him] to prosecution[.]" Finally, the State introduced at trial video footage of Defendant attempting to steal a Psycho Bunny shirt from Dillard's at West Town Mall on June 27, 2022, less than eight months after Ms. Dodge issued the two-year ban against Defendant.

Moreover, looking at the information provided in Exhibit 10, we agree with the State that much of the information is cumulative of other evidence presented at trial. The only information that is not cumulative is that in the Belk case, Defendant was initially charged with burglary, Defendant was "spotted cutting sensors off of unpaid goods," the goods were valued at $333.50, and Defendant was previously banned from all Belk locations. We cannot conclude that this evidence, when viewed in conjunction with the other evidence of Defendant's guilt presented at trial, "more probably than not had a substantial and injurious impact on the jury's decision-making process." *See Clark*, 452 S.W.3d at 288. Defendant is not entitled to relief on this issue.

*Sentencing Classification*

Defendant argues that the trial court erred by classifying him as a career offender because (1) the trial court relied on hearsay evidence when determining whether two of his prior convictions were subject to the 24-hour rule and (2) the trial court violated his Sixth Amendment jury rights as construed in *Erlinger v. United States*, 602 U.S. 821 (2024), by finding that two of Defendant's convictions occurred more than twenty-four hours apart. The State argues that Defendant has waived plenary review of both issues and that he is not entitled to plain error relief. We agree with the State.

At the sentencing hearing, the State introduced certified copies of Defendant's judgment forms in prior cases, reflecting the following information concerning seven felony convictions:

| Case Number | County and State of Offense | Conviction Offense(s) | Offense Date(s) | Date(s) of Entry of Judgment |
|---|---|---|---|---|
| 14CR157 | Greene County, Tennessee | Attempted Delivery of Schedule II Controlled | 4/5/2013 | 11/28/2016 |

- 12 -

| | | | | |
|---|---|---|---|---|
| | | Substance - Heroin | | |
| 07CR197 | Greene County, Tennessee | Felony Escape | 4/24/2007 | 9/5/2007 |
| 02CR176 | Greene County, Tennessee | Delivery of Schedule II Controlled Substance – Cocaine Less than .5 Grams | 9/9/2002 | 10/4/2002 |
| 02CR107 | Greene County, Tennessee | Count 1: Delivery of Schedule II Controlled Substance – Cocaine Less than .5 Grams | 1/9/2002 | 10/4/2002 |
| | | Count 2: Delivery of Counterfeit Schedule II Controlled Substance - Cocaine | 9/25/2001 | |
| 00CRS009120 | Buncombe County, North Carolina | Second Degree Kidnapping | 3/12/2000 | 1/4/2001 |
| 00CRS053714 | Buncombe County, North Carolina | Felony Breaking and Entering | 3/12/2000 | 1/4/2001 |

The State conceded that the North Carolina convictions constituted a single conviction for purposes of determining Defendant's sentencing classification because they were committed on the same day—March 12, 2000. After the parties rested, the trial court further inquired whether Defendant's two felony convictions in Case No. 02CR107 should also be merged under the 24-hour rule, thereby preventing the court from classifying Defendant as a career offender because Defendant would only have five prior felony convictions. The court's inquiry arose from the trial court's erroneous reading of the judgment forms in Case No. 02CR107. For reasons that are not clear from the record, the trial court initially believed that the offense date in Count 1 was listed as 9/9/2002 and that

- 13 -

the offense date in Count 2 was listed as 10/9/2002. However, the actual offense dates for Counts 1 and 2 were listed in the judgment forms as 1/9/2002 and 9/25/2001 respectively. Based on its misreading, the trial court questioned whether the offense dates could have been the same but erroneously listed as different on the judgment forms. The following exchange occurred:

> [The State]: Well, your Honor, they are certified judgments that show two different dates of offense. I mean, this Court has had plenty of cases where judgments show several dates of offense for a case that is docketed as one matter. There haven't been any corrective judgments found. The State would say it's just a coincidence that he happens to commit two different offense[s] on the same day of two different offenses.

> [Trial Court]: All right. [Defendant]?

> [Defense Counsel]: Your Honor, we would take the position—considering the fact that he's looking at [twelve] years, we would then take the position that the Court should not rely upon that. We would ask the Court to sentence him as a persistent offender in this situation.

> [The State]: Again, judge, these are judgments from a criminal court in the state of Tennessee. There's no reason to suspect the judgment dates were erroneously entered.

> [Trial Court]: One thing that would tend to make me question that is the fact that these ones are handwritten.

> . . . .

> I think the way that we could easily resolve this is, perhaps, the parties could reach out to the D[istrict] A[ttorney]'s office in Greene County [("GCDA")] and just give me that peace of mind. I mean, I don't have any issues with sentencing him today as a career if you're going to represent that there's no way a clerical error could be written down, but it's just entirely suspect to this Court that they're in the same docket number. And they are that far apart.

> . . . .

> In order to sentence him as [a career offender], I just want to make sure that those are two separate offense dates, which, as the General said, they very

easily could be, but the fact that they are from [2002] and at that time, judgments were probably handwritten for most of the nation, I just want to make sure that whoever entered this—because they're in the same docket number and they have the same date of offense other than the month—that they're not the same date of offense because they're very similar.

After the exchange, the State offered to contact the GCDA, and the trial court took a recess to allow the State to do so. After the recess, the State informed the trial court that it and defense counsel spoke with the GCDA. The State then explained that in the judgment forms for Case No. 02CR107, the offense date for Count 1 was listed as 1/9/2002, and the offense date for Count 2 was listed as 9/25/2001. After reviewing the judgment forms in Case No. 02CR107 once more, the trial court corrected its mistaken reading and determined that Defendant committed the offenses for which he was convicted in Counts 1 and 2 more than twenty-four hours apart. The trial court then sentenced Defendant as a career offender, finding that he had six prior felony convictions. After hearing arguments from the parties concerning mitigating and enhancement factors, the trial court sentenced Defendant as a career offender to an effective sentence of twelve years' incarceration.

As an initial matter, the State argues that Defendant has waived plenary review of his hearsay and Sixth Amendment challenges to his classification as a career offender by failing to contemporaneously object at trial. Defendant disagrees, asserting that he "did lodge an objection to the career offender designation" sufficient to preserve both issues. Furthermore, he argues waiver of his Sixth Amendment challenge pursuant to *Erlinger* would be particularly "harsh" because *Erlinger* was decided after Defendant's sentencing. [5] We agree with the State.

Ordinarily, before a party can challenge a decision by the trial court on appeal, the party must have preserved the issue in the trial court. "To preserve an issue, the party should first assert a timely objection identifying a specific ground." *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *3 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*. A party's "specific ground" for an objection is important because a party generally may not "assert a new or different theory to support the objection" in the appellate court. *State v. Howard*, No. M2020-01053-CCA-R3-CD, 2021 WL 5918320, at *6 (Tenn. Crim. App. Dec. 15, 2021), *no perm. app. filed*. Moreover, despite "new rules appl[ying] retroactively to cases pending on direct review when the new rule is announced," such retroactive application remains "subject to other jurisprudential

---

[5] Defendant's sentencing hearing occurred on May 4, 2023. The United States Supreme Court's decision in *Erlinger*, 602 U.S. 821, was issued on June 2, 2024.

- 15 -

concepts, such as appellate review preservation requirements and the plain error doctrine." *State v. Minor*, 546 S.W.3d 59, 62 (Tenn. 2018).

Defendant correctly observes that, at the sentencing hearing, defense counsel objected to Defendant's classification as a career offender, asserting that "the [trial c]ourt should not rely upon that" and should "sentence him as a persistent offender." However, this objection came immediately after the trial court expressed its suspicion that there may be a clerical error in the judgment forms for Case No. 02CR107, and the objection came *before* the State introduced the alleged hearsay statements of the GCDA. Therefore, we read Defendant's objection at the sentencing hearing as being solely based on the "specific ground" that the trial court should not rely on a judgment form with a possible clerical error. *See Thompson*, 2023 WL 4552193, at *3. Indeed, defense counsel's objection made no mention of the evidentiary rule against hearsay nor the Sixth Amendment's jury rights. Defendant, for the first time on appeal, may not "assert a new or different theory to support the objection" he asserted at trial. *See Howard*, 2021 WL 5918320, at *6. This is true even though *Erlinger*, the case upon which Defendant's Sixth Amendment challenge is based, was decided while this case was pending review. *See Minor*, 546 S.W.3d at 62. Therefore, we will review Defendant's hearsay and Sixth Amendment challenges for plain error.

The doctrine of plain error permits appellate courts to consider issues that were not raised in the trial court. Tennessee Rule of Appellate Procedure 36(b) states in part that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." It is well-settled that the discretionary authority to invoke the plain error doctrine should be "sparingly exercised," *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007), because "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *State v. Northern*, 262 S.W.3d 741, 767 (Tenn. 2008) (Holder, J., concurring and dissenting) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)).

To determine whether a trial error rises to the level of justifying "plain error" review, we look to the following five factors:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  All five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established.  *State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014).  Even if all five factors are present, "the plain error must be of such a great magnitude that it probably changed the outcome of the trial."  *Id.* (quoting *Adkisson*, 899 S.W.2d at 642).

First, Defendant argues that the trial court committed plain error by relying on hearsay evidence to classify him as a career offender for purposes of sentencing. Specifically, Defendant argues that the trial court erroneously relied on the State's hearsay assertion that the GCDA claimed that Defendant's offenses in Counts 1 and 2 of Case No. 02CR107 occurred more than twenty-four hours apart.  The State does not contest that the State's arguments were hearsay but argues that Defendant is not entitled to plain error relief on this issue because "his substantial rights were [not] adversely affected[] and consideration of the issue is not necessary to do substantial justice."  The State submits that "to the extent that any hearsay was conveyed during the sentencing hearing, it was independently corroborated by the judgments, and it did not affect the court's analysis." We agree with the State.

Tennessee Code Annotated section 40-35-108(a)(3) provides, "A career offender is a defendant who has received . . . [a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony."  For purposes of classifying a defendant as a career offender, "'[p]rior conviction' means a conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced[.]"  T.C.A. § -108(b)(1).  Under Tennessee's "24-hour rule," "convictions for multiple felonies committed within the same twenty-four-hour period [generally] constitute one (1) conviction for the purpose of determining prior convictions[.]"  *Id.* § -106(b)(4).

In this case, Defendant was convicted of burglary of a non-habitation, a Class D felony.  *See id.* § 39-13-1002(c).  Therefore, if Defendant was convicted of "[a]t least six (6) prior felony convictions of any classification[,]" the trial court properly classified him as a career offender.  *See id.* § 40-35-108(b)(1).  As explained above, the State introduced certified copies of Defendant's convictions for seven prior felony convictions.  However, the State conceded that the two North Carolina felonies merged under the 24-hour rule because they occurred on the same day—March 12, 2000.  This concession reduced the possible number of Defendant's prior felony convictions to six.  The trial court further questioned whether the two felony convictions in Counts 1 and 2 of Case No. 02CR107 should also be merged under the 24-hour rule, which would have reduced Defendant's

number of prior felony convictions to five and prevented the trial court from sentencing him as a career offender. *See id.*

Defendant asserts that the trial court erroneously concluded that Counts 1 and 2 in Case No. 02CR107 occurred twenty-four hours apart by relying on the State's hearsay to correct the trial court's misreading of the judgment forms. However, Defendant does not assert that there *is* a clerical error in the judgment forms for Count 1 and 2 of Case No. 02CR107. Thus, even presuming that the trial court relied on the hearsay statements of the State relaying the GCDA's statements, Defendant cannot show that his "substantial rights" were "adversely affected" because the judgment forms themselves in Case No. 02CR107 evidence dates beyond the 24-hour rule. *See Smith*, 24 S.W.3d at 282. The judgment forms indicate that the offense date for Count 1 was 1/9/2002 and the offense date for Count 2 was 9/25/2001. These two dates are clearly more than twenty-four hours apart, serving as an independent ground on which the trial court could have refused to merge the counts for purposes of classifying Defendant. *See* T.C.A. § 40-35-106(b)(4). As detailed above, Defendant concedes that he has four prior felony convictions that arose outside of Case No. 02CR107. The record supports Defendant had six prior felony convictions, and the trial court correctly classified him as a career offender based on his conviction for a Class D felony in this case. *See* § -108(b)(1). Defendant is not entitled to relief on this issue.

Defendant alternatively asserts that the trial court committed plain error by violating his Sixth Amendment jury rights. Specifically, Defendant complains that in classifying him as a career offender, "the Tennessee statute require[d] the [trial] court to make a factual determination as to whether multiple offenses were committed on the same date such that they would fall within the scope of the [24-]hour rule." The State responds that Defendant is not entitled to plain error relief because he "cannot show that a clear and unequivocal rule of law was broken." We agree with the State.

The Sixth Amendment of the United States Constitution guarantees to a criminal defendant a right to a trial by jury. U.S. Const. amend. VI. Pursuant to this Sixth Amendment guarantee, generally "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). This proscription was extended to also apply when a judge, based upon its own factfinding, increases the minimum punishment to which a defendant may be subjected. *See Alleyne v. United States*, 570 U.S. 99, 111-13 (2013). However, there is an important exception to the *Apprendi* rule: the Sixth Amendment does not prevent a judge from increasing the minimum or maximum sentence to which a defendant is subject based upon the judge's factual finding that a defendant has a prior conviction. *Almendarez-Torres v. United States*, 523 U.S. 224, 246 (1998).

Recently, the United States Supreme Court reconsidered the scope of the *Almendarez-Torres* exception. In *Erlinger*, the Court considered the constitutionality of a provision of the "Armed Career Criminal Act" ["ACCA"] that "increase[d] the prison term [a defendant convicted of certain crimes] face[d]" where "the defendant ha[d] three prior convictions for 'violent felon[ies]' or 'serious drug offense[s]' that were 'committed on occasions different from one another[.]'" 602 U.S. at 825 (citing U.S.C. § 924(e)(1) (2012)). In striking down the provision, the Court held that a criminal defendant was "entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt[.]" *Id.* at 835. The Court described "*Almendarez-Torres* as 'at best an exceptional departure' from 'historic practice'" and "'arguab[ly] . . . incorrect[t].'" *Id.* at 837 (quoting *Apprendi*, 530 U.S. at 487, 489). It explained, "Under th[e] exception, a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.'" *Id.* at 838 (quoting *Mathis v. United States*, 579 U.S. 500, 511-512 (2016)).

Defendant asserts a similar Sixth Amendment challenge to Tennessee's 24-hour rule, requiring a judge to decide whether "multiple felonies [were] committed within the same twenty-four-hour period" so as to make those felonies "constitute one (1) conviction for the purpose" of determining a defendant's sentencing range. *See* T.C.A. § 40-35-106(b)(4). Defendant claims, "After *Erlinger*, it is clear that such a factual determination—even if it were the most obvious determination possible—cannot be made by a judge, only a jury." The State responds that Defendant cannot show that a clear and unequivocal rule of law was breached by the trial court's reliance on the 24-hour rule. We agree with the State.

Defendant admits that the issue of whether the 24-hour rule is unconstitutional under *Erlinger* is an issue of first impression. Despite Defendant's protestations to the contrary, we have held that plain error relief is improper where a defendant seeks relief under a novel question of law because a defendant cannot show that a "clear and unequivocal rule of law was breached." *See State v. Pewitte*, No. W2024-01128-CCA-R3-CD, 2025 WL 3510902, at *6 (Tenn. Crim. App. Dec. 8, 2025) (declining to grant plain error relief where the defendant's basis for relief required answering an issue of first impression), *perm. app. filed*; *see also State v. Cody*, No. E2022-00947-CCA-R3-CD, 2023 WL 9006670, at *20 (Tenn. Crim. App. Dec. 28, 2023) ("a novel argument . . . cannot be the basis for granting plain error relief"). We decline to review the issue for plain error.

*Confrontation Clause*

Seeking plain error relief, Defendant asserts that the introduction of the Affidavit of Complaint in Exhibit 10 violated his confrontation rights by introducing testimonial evidence from a non-testifying witness that was not subject to prior cross-examination.

The State does not contest that the admission of the Affidavit of Complaint violated the Confrontation Clause, but it argues that Defendant is not entitled to plain error relief because consideration of the issue is not necessary to do substantial justice and Defendant cannot show that the error probably affected the jury's verdict. We agree with the State. As explained above, to be entitled to plain error relief, Defendant must demonstrate that the alleged error was "of such a great magnitude that it probably changed the outcome of the trial." *Bishop*, 431 S.W.3d at 44. Defendant cannot meet this burden because, as we have shown, the evidence of Defendant's guilt at trial was overwhelming, and the information in the Affidavit of Complaint was either cumulative or inconsequential. Defendant is not entitled to relief on this issue.

### *Jury Instructions*

Defendant avers that the trial court committed plain error by instructing the jury that the "without the consent of the property owner" element of burglary applied to "[D]efendant's actions" rather than his "entry" onto West Town Mall property. He argues that this instruction was plainly erroneous because it implied that the element was satisfied if the State showed that West Town Mall did not consent to *either* Defendant's entering the mall *or* to his stealing of the Psycho Bunny shirt. The State argues that Defendant is not entitled to plain error relief. We agree with the State.

On Defendant's charge of burglary, the trial court instructed the jury as follows:

Any person who commits the offense of burglary is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant entered a building other than a habitation;

and

(2) that the defendant committed or attempted to commit Theft;

The necessary elements of Theft are as follows:

a. that the defendant knowingly obtained or exercised control over property owned by Dillard's;

and

- 20 -

b. that the defendant did not have the owner's effective consent;

and

c. that the defendant intended to deprive the owner of the property

(3) that the defendant acted without the effective consent of the owner; West Town Mall;

and

(4) that the defendant acted knowingly

A defendant is entitled "to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). "Trial courts have the duty, without request, to give proper jury instructions as to the law governing the issues raised by the nature of the proceeding and the evidence introduced at trial." *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013). But jury instructions must be viewed in their entirety, and phrases may not be examined in isolation. *State v. Rimmer*, 250 S.W.3d 12, 31 (Tenn. 2008). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Majors*, 318 S.W.3d 850, 864-65 (Tenn. 2010) (quotation and citation omitted).

Even assuming that the trial court's instructing the jury constituted plain error, we conclude that the error would not be "of such a great magnitude that it probably changed the outcome of the trial" because there was overwhelming evidence at trial that West Town Mall did not consent to Defendant's entry onto its property. *See Bishop*, 431 S.W.3d at 44. On December 12, 2021, West Town Mall issued a barment form against Defendant prohibiting him from entering "West Town Mall and the entire property thereof" for two years and explaining that he would be "subject [] to prosecution" if he returned before the two-year period expired. Nevertheless, Defendant returned to the West Town Mall less than a year later on June 27, 2022. Ms. Dodge explicitly testified that Defendant was still banned from the mall when he returned. Immediately after discovering that Defendant was still subject to the December 12, 2021 ban, West Town Mall sought burglary charges against Defendant. Based on this evidence, we are satisfied that the outcome of the trial would have been unaffected if the jury instructions more clearly applied the "without the

consent of the property owner" element of burglary to only Defendant's entry.  *See id.*
Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.


*S/Timothy L. Easter*

TIMOTHY L. EASTER, JUDGE